1  Dan Stormer, Esq. [S.B. #101967]
   Hanna Chandoo, Esq. [S.B. #306973]
2  HADSELL STORMER RENICK & DAI LLP
   128 N. Fair Oaks Avenue
3  Pasadena, California 91103
   Tel: (626) 585-9600 /Fax: (626) 577-7079
4  Emails: dstormer@hadsellstormer.com
                hchandoo@hadsellstormer.com
5
   John Burton, State Bar No. 86029
6  jb@johnburtonlaw.com
   THE LAW OFFICES OF JOHN BURTON
7  128 North Fair Oaks Avenue
   Pasadena, California  91103
8  Tel.: (626) 449-8300/Fax: (626) 440-5968
9  Thomas C. Seabaugh, State Bar No. 272458
   tseabaugh@seabaughfirm.com
10 THE LAW OFFICE OF THOMAS C. SEABAUGH
   333 South Grand Avenue, 42nd Floor
11 Los Angeles, California  90071
   Tel.: (213) 225-5850
12
13 Attorneys for Plaintiffs

14 **UNITED STATES DISTRICT COURT**
   **EASTERN DISTRICT OF CALIFORNIA**

15 DORIS ANDERSON, Individually and as the       Case No.:
   Successor in Interest for JAH-QUAVIOUS
16 ANDERSON, Deceased, and JAMES JENKINS,        **COMPLAINT FOR DAMAGES:**

17              Plaintiffs,                          1.  Fourteenth Amendment Deliberate
                                                         Indifference to Serious Medical Need (42
18        v.                                             U.S.C. § 1983)
                                                     2.  Fourth Amendment Excessive Force (42
19 COUNTY OF FRESNO, FRESNO SHERIFF-                     U.S.C. § 1983)
   CORONER MARGARET MIMS, FRESNO               3.  Fourteenth Amendment Failure to Protect
20 COUNTY DIRECTOR OF PUBLIC HEALTH                     From Harm (42 U.S.C. § 1983)
   DAVID POMAVILLE, CALIFORNIA                4.  Fourteenth Amendment Substantive Due
21 FORENSIC MEDICAL GROUP (AKA                          Process Deprivation of Right to Familial
   WELLPATH, LLC), HIG CAPITAL LLC, and               Relationship (42 U.S.C. § 1983)
22 DOES 1 to 100,                                  5.  *Monell* Liability (42 U.S.C. § 1983)
                                                     6.  42 U.S.C. § 12131 et seq.) Title II of the
23              Defendants.                             Americans with Disabilities Act
                                                     7.  Rehabilitation Act
24                                                   8.  Failure to Furnish/Summon Medical Care
                                                     9.  Wrongful Death
25                                                   10. Negligence
                                                     11. Bane Act (Cal. Civ. Code § 52.1)
26                                                   12. Battery
27                                                 **DEMAND FOR JURY TRIAL**
28

COMPLAINT FOR DAMAGES

**INTRODUCTION**

1.      This civil-rights, wrongful-death and survival action arises from Defendants' unconstitutional response to Jah-Quavious "Quabo" Anderson, an inmate at the Fresno County Jail, who suffered from a severe chronic seizure disorder. As alleged below, Defendants' deliberate choices triggered a severe medical crisis, and their deliberate indifference to his medical condition resulted in Mr. Anderson's unnecessary death at age 29.

2.      Following a significant motor vehicle accident while a teenager, Mr. Anderson developed a serious seizure disorder that required a strict medication regimen. He was compliant. Despite the medications, Environmental factors raised the risk of seizures. Mr. Anderson was particularly sensitive to stress and extreme heat.

3.      The following allegations are made to the best of Plaintiffs' ability and on information and belief at this early stage. On October 2, 2020, Plaintiffs' counsel served a California Public Records Act request on Sheriff-Coroner Mims. On October 24, 2020, Plaintiffs' counsel received a response from Sheriff-Coroner Mims' subordinate stating: "The Fresno County Sheriff's Office has added your request to our PRA que. We have documents responsive to your request which will take longer than (10) days to process. Due to our current backlog of requests, the current estimate to review and gather the material to respond to your request is approximately 6-9 months, although we may be able to process it sooner." There has been no further response. Moreover, as Coroner, Defendant Mims is required to prepare and make available an autopsy report. That has not yet happened.

4.      On June 22, 2020, Mr. Anderson appeared in Fresno Superior Court on a pending criminal matter. he was unexpectedly remanded to the custody of. Already stressed by his incarceration, Plaintiffs believe he was housed in locations that were intolerably hot and had poor air circulation. Plaintiffs are informed and believe that Mr. Anderson requested appropriate medications and housing, which he did not receive. When Mr. Anderson began seizing, Defendants did not respond timely. When they did respond, they used force and handcuffed him even though he was visibly ill and did not pose a threat. Paramedics were not called timely. Mr. Anderson died as a result.

**JURISDICTION**

5.      This Complaint seeks damages for violations of the civil rights, privileges, and immunities

COMPLAINT FOR DAMAGES                    -1-

guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. §§ 1983 and 1988, and for violations of California state law. This Complaint further seeks damages for the violation of the civil rights, privileges, and immunities, of Doris Anderson and James Jenkins as guaranteed by the Fourteenth Amendments of the United States Constitution, and under California state law.

6.      This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. §§ 1331 and 1343.

7.      This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, because the claims form part of the same case or controversy.

**VENUE**

8.      Plaintiffs' claims arose in the County of Fresno, California. Venue therefore lies in the Eastern District of California pursuant to 28 U.S.C. § 1391(b)(2).

9.      Rule 3 of the Federal Rules of Civil Procedure and Local Rule 120(d) authorizes assignment to this division because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the counties served by this division.

**PARTIES**

10.      Plaintiff Doris Anderson is Decedent's mother, sole heir, and successor-in-interest. She files the appropriate declaration pursuant to Cal. Civ. Proc. Code § 377.32 to pursue her son's survival claims. Mrs. Anderson has requested Decedent's Death Certificate and received confirmation from the State of California that it will be mailed to her forthwith.  Plaintiffs will amend this Complaint upon receipt of same.  In addition to her claims as her son's successor in interest, she sues individually for violations of her civil rights under the Fourth and Fourteenth Amendments and pursuant to state law.

11.      Plaintiff James Jenkins has been married to Plaintiff Doris Anderson for 25 years and raised Decedent as his own child. He is suing individually for violations of his civil rights under the Fourteenth Amendments and for wrongful death pursuant to state law.

12.      Defendant County of Fresno ("County") is a public entity, duly organized and existing under the laws of the State of California. Under its authority, Defendant County operates and manages Fresno County Jail, and is, and was at all relevant times mentioned herein, responsible for the actions and/or inactions and the policies, procedures and practices/customs of the Fresno County Sheriff's

Department, and its respective employees and/or agents. Fresno County Sheriff's Department operates Fresno County Jail, and is and was responsible for ensuring the provision of emergency and basic medical and mental health care services to all Fresno County Jail prisoners. Defendant County has authority to sue and be sued, to purchase and make contracts, to dispose of and resolve legal actions and tort claims, to provide for jails and corrections, and to operate and/or be responsible for county health facilities, such as its jails through contracts, joint ventures or partnerships. The Fresno County Sheriff's Department is a governmental department fully funded and overseen by the County. As such, Defendant County is responsible for all deputy training, discipline, hiring, firing, maintaining deputy and staff records, and to taking corrective actions as it affects the Fresno County Sheriff's Department and its jails, prisoners and pretrial detainees and deputy officers and staff. The Fresno County Sheriff's Department is a public entity subject to suit.

13.    Defendant Fresno County Sheriff-Coroner Margaret Mims was at all relevant times the Sheriff of the County of Fresno, and therefore the decisionmaker of the Fresno County Sheriff's Department. As Sheriff, Defendant Mims was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all Fresno County Sheriff's Department custodial employees, contractors, and their agents and Does 1 through 100. Defendant Mims was charged by law with the administration of the Fresno County Jail, with the assistance of a small group of executive officers. Defendant Mims also is and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the Fresno County Sheriff's Department alleged herein were committed. Defendant Mims is being sued in her individual capacity as a supervisory official for her own culpable action and inaction in the training, supervision, or control of her subordinates, or for her acquiescence in the constitutional deprivations which this Complaint alleges, or for conduct that showed a reckless or callous indifference to the rights of Decedent and Plaintiffs. Sheriff Mims's affirmative conduct involves her failure to ensure enforcement of policies, rules, or directives that set in motion a series of acts and failures to act by others which she knew or reasonably should have known, would cause others to inflict the constitutional injuries suffered by Decedent and Plaintiffs. Defendant Mims failed to adequately monitor the administration of the contract with HIG, CFMG/Wellpath ("Wellpath") even though she had been repeatedly alerted to their pattern of

unconstitutional conduct and knew that the jail had become unsafe for those with serious medical needs like Decedent. Defendant County of Fresno was and is responsible for overseeing that Wellpath staff complies with their contractual medical responsibilities to prisoner's mental health care.

14.    Defendant David Pomaville ("Pomaville") was at all times relevant herein the Fresno County Director of Public Health, the decisionmaker within the Fresno County Department of Public Health. As Director, Defendant Pomaville was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all Wellpath and Department of Public Health employees and/or agents and Does 1 through 100. Defendant Pomaville was charged by law with the administration of medical and mental health services by and through Wellpath. Defendant Pomaville also was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts and failures to act alleged herein were committed. Defendant Pomaville is being sued in his individual capacity as a supervisory official for his own culpable action and inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations which this Complaint alleges, and for conduct that showed a reckless or callous indifference to the rights of Mr. Anderson. Defendant Pomaville's affirmative conduct involves his promulgation of inadequate policies and failure to ensure enforcement of policies, rules, and directives that set in motion a series of acts and failures to act by others which he knew or reasonably should have known, would cause others to inflict the injuries suffered by Mr. Anderson. Defendant Pomaville's failed to adequately monitor the administration of the contract with Wellpath even though he had been repeatedly alerted to their pattern of unconstitutional conduct and knew that the jail had become unsafe for those with serious medical needs like Mr. Anderson. County of Fresno was and is responsible for overseeing that Wellpath staff complies with their contractual medical responsibilities to prisoner's mental health care.

15.    Defendant California Forensic Medical Group ("CFMG") is a California corporation headquartered in Monterey, California. CFMG is a private correctional health care provider that services approximately 65 correctional facilities in 27 California counties. The County of Fresno contracts with CFMG to provide medical, mental health, and dental services for the Fresno County Jail. At all relevant times mentioned herein, CFMG was responsible for the health services provided to Mr. Anderson during

his detention in the Fresno County Jail. Effective July 1, 2018, the County of Fresno entered into a contract with Defendant CFMG (acquired by HIG in January 2013) to provide through its employees, agents and representatives medical, dental and mental health care to County jails. In this respect, CFMG, now known as Wellpath and HIG through its executives, officers, leadership, employees, agents and representatives, provide a governmental function and stand in the same capacity as County of Fresno in carrying out their duties at the Fresno County Jail. County of Fresno, jointly with CFMG/Wellpath and HIG, was and is responsible to develop joint policies and procedures affecting those who are diagnosed with epilepsy in custody. This entity is referred to as "Wellpath" in this complaint.

16.   Defendant H.I.G. Capital LLC, (hereinafter "HIG") is a private equity firm doing business in California county jails. HIG acquired CFMG in 2013 and rebranded its name to Correctional Medical Group Companies (CMGC) that same year. HIG is the owner, manager and partner of CFMG (aka CMGC and now known as Wellpath), which is employed to provide delivery of medical services to prisoners and was and is responsible for the management, hiring, retaining, training, and supervising of the conduct, policies and practices, customs, standards, finances, of its employees, managers, supervisors, contractors, leaders in the service of providing medical care to prisoners, including prisoners such as Mr. Anderson in the Fresno County Jail. CFMG/Wellpath executives, directors, supervisors and managers, physicians, nurses, LVN and mental health providers act on behalf of HIG and CFMG/Wellpath. HIG is the alter ego of CFMG/Wellpath, and/or alternatively CFMG/Wellpath act on behalf of HIG who have control over them.

17.   The true names and identities of Defendants Does 1 through 100 are presently unknown to Plaintiffs. Plaintiffs allege that each of Defendants Does 1 through 100 was employed by the County of Fresno and/or the Fresno County Sheriff's Department and/or California Forensic Medical Group/Wellpath and/or HIG Capital, LLC at the time of the conduct alleged herein. Plaintiffs allege that each of Defendants Does 1 through 100 was deliberately indifferent to Mr. Anderson's medical needs and safety, failed to provide necessary medical care to him or take other measures to prevent seizures, violated his civil rights, wrongfully caused his death, and/or encouraged, directed, enabled and/or ordered other defendants to engage in such conduct. Plaintiffs further allege that Defendants Does 1 through 100 violated Plaintiffs' Fourth, Eighth and Fourteenth Amendment rights and rights under California state law.

Plaintiffs further allege that each of Defendants Does 1 through 100 was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of medical, mental health, and jail custody employees and/or agents involved in the conduct alleged herein.

18.  Each individual and each Doe defendant acted under color of law and within the scope of his or her agency and employment for Defendants, and in some manner contributed to the death of Decedent, or otherwise caused the deprivation of Plaintiffs' and Decedent's constitutional rights and other harm.

19.  Plaintiffs are informed and believe and thereon alleges that each Defendant was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the acts and omissions alleged, was acting within the course and scope of those relationships. Plaintiffs are further informed and believe and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and authorized the acts or omissions of each Defendant as alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiff's and Decedent's constitutional rights and other harm.

20.  Plaintiffs bring these claims pursuant to Cal. Civil Proc. Code §§ 377.20 et seq. and §§ 377.60 et seq., which provide for survival and wrongful death actions and are incorporated into the § 1983 claims through 42 U.S.C. § 1988. Plaintiff Doris Anderson, also bring her claims individually and on behalf of Decedent Jah-Quavious "Quabo" Anderson, on the basis of 42 U.S.C. § 1983, the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, the ADA and RA, and other provisions of federal and state civil-rights law. Plaintiffs bring these claims as Private Attorneys General to vindicate not only his rights and those of Decedent, but others' civil rights of great importance.

## EXHAUSTION OF PRE-LAWSUIT PROCEDURES
## FOR STATE LAW CLAIMS

21.  Plaintiffs filed government tort claims with Defendant County of Fresno on November 6, 2020. By correspondence dated January 26, 2021, the County of Fresno rejected the claims on behalf of Plaintiffs. This action is timely filed within all applicable statutes of limitation.

22.  This complaint may be pled in the alternative pursuant to Federal Rule of Civil Procedure

COMPLAINT FOR DAMAGES             -6-

8(d).

# FACTUAL ALLEGATIONS

### Fresno County Jail's History of Inadequate Correctional and Medical Care

23.     In 2011, California Assembly Bill 109 mandated a "realignment" that shifted inmates from the California Department of Corrections and Rehabilitation to local jails. According to a 2019 ProPublica Report, "[n]o other jail in California has seen a sharper increase in inmate deaths than the Fresno County Jail." Indeed, in October of 2020, California State Auditor Elaine Howle found that the Fresno County Jail has consistently exceeded capacity since realignment and has seen a 133% increase in annual deaths during the same period.

24.     Also in 2011, the Prison Law Office filed a class action lawsuit against Defendant Mims and then-Public health Director Edward Moreno alleging a "policy and practice of failing to prescribe medically necessary medications, including for … seizure disorders" at Fresno County Jail. The lawsuit further alleged "a policy and practice of failing to adequately identify and treat the health care problems of newly arriving prisoners during the screening and intake process" and "insufficient health care staffing to provide adequate health care to prisoners." In 2015, a consent decree was reached in that case. The remedial plan created pursuant to the consent decree required that "[r]estraints shall not be used for medical purposes" and that "[t]he Sheriff's Office and medical staff shall communicate to determine appropriate housing for inmates with disabilities. Medical staff shall make available all information needed to make adequate housing decisions." Defendants were aware of and disregarded these policies, resulting in Mr. Anderson's unnecessary suffering and death.

25.     The remedial plan further required that the County increase its correctional staff by 127 employees. On information and belief, the County has failed to meet this requirement.

26.     The surge in inmate deaths at Fresno County Jail, and specifically the death of Mr. Anderson, are a direct result of constitutionally inadequate policies and practices implemented by Defendants County of Fresno, Sheriff-Coroner Mims, Public Health Director David Pomaville and Wellpath that fail to comply with the remedial plan and limit information sharing between medical and custodial staff. Indeed, State Auditor Howle found that "Alameda and Fresno County jails lack sufficient information regarding whether inmates have mental illnesses, which hinders their ability to make critical

housing and care decisions to keep inmates safe."

**Decedent's Death in the Fresno County Jail**

27.    As a teenager, Mr. Anderson was involved in a motor vehicle accident and sustained a serious head injury. He was comatose for four days, and thereafter suffered from epilepsy, a serious seizure disorder that he controlled with medication. Because of the frequency and intensity of the seizures, Mr. Anderson was highly compliant. He also avoided circumstances such as stress and heat that triggered his seizures.

28.    From 2011 to 2020, Mr. Anderson was incarcerated from time to time in the Fresno County Jail and in state prison. Each time, Mr. Anderson informed custody and medical staff he has a serious seizure disorder and was prone to seizures, and needed both a cool and non-stressful environment and medications. Despite precautions, Mr. Anderson had seizures in the Jail and in prison, but their severity was mitigated by the medications and other precautions. On information and belief, custodial and medical staff at Fresno County Jail were or should have been aware of Mr. Anderson's history of seizures through their prior documentation and personal knowledge, and from Mr. Anderson's providing his medical history on admission to the jail.

29.    On the morning of June 22, 2020, Mr. Anderson appeared for an arraignment in Fresno County Superior Court. He was unexpectedly remanded to the custody of the Fresno County Sheriff's Department and bail was set, which his family did not have the resources to post immediately.

30.    Plaintiffs are informed and believe that upon intake, the Jail staff failed to provide Mr. Anderson with a medical assessment and treatment for his epilepsy despite Mr. Anderson's known serious medical condition. The Jail medical staff further failed to provide Mr. Anderson his seizure medication, despite the fact that Mr. Anderson made multiple requests for same. Additionally, medical and custodial staff failed to accommodate Mr. Anderson's serious medical condition by housing him in a medical ward with adequate ventilation and air conditioning, despite knowledge and documentation of his special needs.

31.    On the day he was remanded, the weather in Fresno was sunny and 104 degrees. The following day, it was sunny and 103 degrees. On information and belief, Mr. Anderson was housed in an area of the Jail that faced the sun, causing heat and high temperatures in his cell. On top of the weather, there was inadequate air conditioning, and poor or nonexistent air circulation in Mr. Anderson's cell.

These conditions culminated in a hot and intolerable housing environment in Mr. Anderson's cell.

32.     Mr. Anderson complained to custodial and medical staff about the heat, reminding them of his medical condition and the serious risk that it would trigger seizures, and made repeated requests to move housing locations. Custodial and medical staff received his complaints and requests to transfer to a different cell. Although the custodial and medical staff knew that heat triggered Mr. Anderson's epilepsy and made him especially prone to seizures, they ignored Mr. Anderson's complaints and requests to be moved.

33.     Plaintiffs are informed and believe that as a result of custodial and medical staff's deliberate indifference to Mr. Anderson's serious medical needs, Mr. Anderson was forced to remain in the sweltering heat for more than 27 hours, where he suffered needlessly from heat induced temperature dysregulation and pre-seizure symptoms. Despite repeatedly informing medical and custodial staff of his symptoms and his need for seizure medications, Mr. Anderson was left to languish for over 27 hours and denied access to medical care, including his medications.

34.     Plaintiffs are informed and believe that shortly after midnight on June 24, 2020, Mr. Anderson's cellmate woke up to Mr. Anderson having a seizure. The cellmate immediately got on the emergency intercom to ask for help, and enlisted other inmates to yell "Man down!" There was no response from custodial or medical staff.

35.     Plaintiffs are informed and believe that ten minutes later, after the cellmate and other inmates made several more calls for help, that custodial staff members finally came to Mr. Anderson's cell. Mr. Anderson was crying out incoherently and moaning in pain, leaving the officers no doubt that he was experiencing a severe medical crisis. Instead of providing emergency medical assistance, the correctional officers handcuffed Mr. Anderson in a rough attempt to restrain him and threw him to the concrete floor, causing Mr. Anderson to sustain a head injury. Eventually medical staff responded, but paramedics were not called in a timely manner, and Mr. Anderson was denied the timely medical treatment he needed to survive.

**HIG's Ownership, Management Partnership, and Control of WELLPATH, CMGC-CCS, and CFMG**

36.     Defendant California Forensic Medical Group ("CFMG" aka Correctional Medical Group

Companies, Inc. or "CMGC,"[1] and now also known as Wellpath, since October 1, 2018).[2] They are referred to collectively and individually as "Wellpath."

37.    Wellpath is a California corporation licensed to and doing business in the State of California, as a contracted provider of medical and mental health services to the County of Fresno, Sheriff Mimms, and their jail systems.

38.    Wellpath was initially founded in 1983 as CFMG, a private for-profit correctional health care provider that over the years provided services to approximately 65 correctional facilities in 27 California counties (including Fresno), or about 90 percent of outsourced county jail private medical care in California.[3] It has a business address in Monterey County and in San Diego County, and since October 1, 2018, in Nashville, Tennessee as Wellpath.[4]

39.    At all material times, Wellpath was and is owned and controlled by HIG Capital. Wellpath acts on behalf of HIG and was and is responsible for the hiring, retaining, training, and supervising of the conduct, policies and practices of its employees and agents of Wellpath, including DOES 1-20.

40.    HIG accomplishes this inter alia, by placing its in-house professional and expertise as board members of Wellpath to ensure their control over Wellpath. There is unity of interest and ownership such that the separate personalities of HIG and Wellpath no longer exist as Wellpath and their employees and agents act with the consent, management, approval, ratification and direction of HIG

41.    HIG places at least two Managing Directors and one Principal of its private equity team as

---

[1] HIG acquired CFMG/Wellpath, rebranding its name under the umbrella of Correctional Medical Group Companies (CMGC) in 2013, *see* https://www.linkedin.com/company/correctional-medical-group-companies-inc-, and https://www.linkedin.com/company/ca-forensic-medical-group.

[2] On October 1, 2018, H.I.G. Capital, LLC announced acquisition and joining of forces of CMGC (albeit CFMG) with Correct Care Solutions ("CCS"), creating a partnership with management, to be headquartered in Nashville Tennessee. *See* https://higcapital.com/news/release/1128. This acquisition was rebranded and renamed Wellpath. *See* https://en.wikipedia.org/wiki/Correct_Care_Solutions. CMGC website advertises that it was founded in 1983 (the year CFMG was created) and gives notice that "We are now Wellpath!" *See* www.cmgcos.com; https://www.linkedin.com/company/correctional-medical-group-companies-inc- https://www.bizjournals.com/nashville/news/2018/11/07/one-of-nashvilles-largest-private-companies-merges.html.

[3] Brad Branan, "California for-profit company faces allegations of inadequate inmate care", January 17, 2015, SACRAMENTO BEE, at p. 4, *available at* www.sacbee.com/news/investigations/the-public-eye/article7249637.html.

[4] CFMG/Wellpath sets itself up as incorporated in Nashville Tennessee. *See* http://www.buzzfile.com/business/California-Forensic-Medical-Group,-Incorporated-831-649-8994.

Board members, Chief Financial Officers, or other executive officers of Wellpath aka CMGC to ensure continuity of control and management over Wellpath. These high-ranking HIG members include, but are not limited to, Justin Reyna, an HIG Managing Director who serves as a Board Member of Wellpath aka CMGC; Michael Kuritzky, an HIG Principal who serves as a Chief Financial Officer and Secretary of Wellpath aka CMGC; and Rob Wolfson, an HIG Managing Director who is intimately involved in the day-to-day management of Wellpath aka CMGC. HIG. employees are routinely appointed to Wellpath's Board of Directors to ensure financial control over its affairs. Additionally, they have knowledge of HIG's contractual relationship with Wellpath, which has subsumed CFMG, and how HIG employees are appointed to Wellpath's board of directors and the duties of its board members."

42.    Before acquiring CFMG through joining CFMG, CMGC, and CCS and renaming them Wellpath, HIG knew or should have known of the pervasive unconstitutional conduct of these companies. HIG knew this and acquired this information through performing due diligence analysis prior to acquiring CFMG, CMGC and CCS. It made the decision that providing health care in jails was a financially lucrative business to acquire, control and manage, and have adjusted its private equity fund investments and operational structure to capitalize on sick and mentally-ill inmates in jail systems across California. HIG's use of Wellpath is but a mere shell, an instrumentality or conduit for the business of financially profiting from providing medical care to the sick, injured and mentally ill in jails through these shell companies.

43.    HIG renamed CCS-CMGC "Wellpath" in October 2018, for the purpose of carrying HIG's ownership and financial interests in providing jail mental and medical health care and so HIG controls the assets and financial gains while Wellpath assume the liabilities. Wellpath is HIG's 23rd control investment in healthcare since 2008 and is its 14th current platform in the sector. Wellpath is estimated to generate $1.5 billion annually.[5]

44.    On October 1, 2018, HIG publicly announced that "[o]ver the years, as the country's health care system has changed; we have seen more and more individuals with acute mental health diagnosis and

---

[5] HIG Capital, "Correct Care Solutions and Correctional Medical Group Companies Join Forces to Deliver Best-in-Class Healthcare." HIG CAPITAL NEWS, October 1, 2018, *available at* https://higcapital.com/news/release/1128.

substance use disorders being treated by our doctors, nurses and clinicians in correctional settings."[6]

45.    A Managing Director of HIG announced, "We are proud of what we have accomplished since partnering with CMGC in 2012, and excited to bring these two companies together."[7]

46.    HIG uses the corporate entity as a shield against personal liability and harm caused to inmates in need of medical treatment in jails.

47.    Recognition of HIG. as a separate corporate entity would promote injustice and defeat the rights and equities of persons such as Mr. Anderson and Plaintiffs; it would enable and facilitate continued Wellpath unconstitutional conduct, practices, customs and policies, actions and inactions that harm this particularly vulnerable jail population and discourage abatement of these unconstitutional actions and inactions.

**CLAIMS FOR RELIEF**

**First Claim for Relief**

**42 U.S.C. § 1983 (Deliberate Indifference to Serious Medical Need in Violation of Fourteenth Amendment to the United States Constitution)**

**(Against Defendants Fresno County, Mims, Pomaville, and Does 1-100)**

**(Plaintiff Anderson, as Successor-in-Interest to Decedent, Against Individual Defendants and Does 1-100)**

48.    Plaintiffs re-allege and incorporate by reference all previous paragraphs as though fully set forth herein.

49.    Defendants have inadequate policies, procedures, and practices for identifying inmates in need of medical treatment and providing appropriate medical treatment. Defendants also fail to appropriately train and supervise staff regarding the provision of treatment to inmates with medical issues.

50.    Defendants have consistently demonstrated deliberate indifference to their constitutional obligation to provide constitutionally adequate medical care to inmates in their jails. Defendants' failure to correct their policies, procedures, and practices, despite longstanding and repeated notices of significant and dangerous deficiencies, establishes deliberate indifference in the provision of medical treatment.

---

[6] *Id.*
[7] *Id.*

51.     Defendants knew or should have known that Mr. Anderson had a serious medical condition and required appropriate medical treatment and housing accommodations that accounted for his vulnerability to seizures upon his remand to the Fresno Sheriff Department's custody.

52.     Defendants knew or should have known that on or around June 23 and 24, 2020, Mr. Anderson was having one or more seizures in his cell and required prompt and emergent care.

53.     Defendants failed to properly house Mr. Anderson. Defendants also failed to provide necessary medical evaluation and/or treatment, including his medication, to Mr. Anderson while he was in their care and custody at the Jail, despite his known history of serious seizure disorder, obvious symptoms of medical crisis, and overt medical emergency.

54.     Not only did Defendants fail to provide the necessary medical attention that Mr. Anderson needed in the moment of his acute medical emergency, Defendants handcuffed Mr. Anderson even though he was visibly ill and not posing a threat. Defendants furthermore used unwarranted and excessive force on Mr. Anderson in the midst of his medical crisis, not compounding his needless suffering and risk of death.

55.     Defendants' acts and/or omissions as alleged herein, including but not limited to their failure to provide Mr. Anderson with the appropriate medical assessment, treatment and housing, and failure to adequately identify or address his seizure, along with the acts and/or omissions of the Defendants in failing to train, supervise and/or promulgate appropriate policies and procedures in order to provide treatment and identify risk of seizures, constituted deliberate indifference to Mr. Anderson's serious medical needs, health, and safety.

56.     As a direct and proximate result of Defendants' conduct, Mr. Anderson experienced physical pain, severe emotional distress, and mental anguish during his incarceration at the Jail, as well as the loss of his life and other damages alleged herein.

57.     The aforementioned acts of the individual Defendants and Does were conducted with conscious disregard for the safety of Mr. Anderson and others, and were therefore malicious, wanton, and oppressive. As a result, those Defendants' actions justify an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future. Defendants County and its departments are immune, however.

**Second Claim for Relief**

**42 U.S.C. § 1983 (Excessive Force in Violation of Fourth Amendment to the United States Constitution)**

**(Against Defendants Fresno County, Mims, and Does 1-100)**

58.     Plaintiffs re-allege and incorporate by reference the allegations contained in this complaint, as though fully set forth herein.

59.     The conduct complained of herein was undertaken pursuant to the policies, practices, and customs of the Fresno County Sheriff-Coroner Department, an agency of Fresno County, and was sanctioned and ratified by Defendant Mims and each of the Doe Defendants.

60.     Defendants, acting under color of state law and through their policies, practices and customs, deprived Mr. Anderson of rights, privileges, and immunities secured by the Constitution and the laws of the United States under the Fourth and Fourteenth Amendments by subjecting Mr. Anderson, or through their deliberate indifference in allowing others to subject him, to unreasonable, unnecessary, and excessive force by handcuffing and other uses of force even though Mr. Anderson was visibly ill and not posing a threat. Defendants furthermore used unwarranted and excessive force on Mr. Anderson in the midst of his medical crisis, compounding his needless suffering and increasing the risk of death.

61.     As a direct and proximate result of Defendants' conduct, Mr. Anderson was injured as set forth above, experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

62.     Mr. Anderson's injury entitles his successor in interest to compensatory damages, and also punitive damages against Defendants Mims and the Doe Defendants in their individual capacities.

**Third Claim for Relief**

**42 U.S.C. § 1983 (Failure to Protect from Harm In Violation of the Fourteenth Amendment to the United States Constitution)**

**(Against all Defendants)**

63.     Plaintiffs re-allege and incorporate by reference the allegations contained in this complaint, as though fully set forth herein.

64.     Each Defendant could have taken action to prevent unnecessary harm to Mr. Anderson but

COMPLAINT FOR DAMAGES                    -14-

refused or failed to do so.

65.     Defendants failed to have minimally necessary policies and procedures concerning the adequate treatment of Mr. Anderson, whom they knew or should have known was in need of medical attention for his seizure disorder and the extreme heat inside his cell.

66.     Defendants demonstrated deliberate indifference to their constitutional obligation to provide minimally adequate medical care to inmates at Fresno County Jail. Defendants' failure to correct their policies, procedures, and practices, despite longstanding and repeated notice of significant and dangerous deficiencies, evidences deliberate indifference in the provision of medical treatment.

67.     Defendants were specifically on notice that Mr. Anderson had a serious medical condition and required appropriate medical treatment and housing accommodations that accounted for his vulnerability to seizures upon his remand to the Fresno Sheriff Department's custody.

68.     Defendants failed to immediately provide necessary medical treatment to Mr. Anderson while he was in their custody and care despite his obvious signs of medical distress, instead ignoring numerous calls for help from Mr. Anderson, his cellmate, and other inmates.

69.     The acts and/or omissions of Defendants as alleged herein, including but not limited to their failure to provide Mr. Anderson with appropriate medical care, failure to promulgate appropriate policies and procedures in order to provide treatment to inmates with seizure disorders, failure to promulgate and follow a minimally adequate lifesaving treatment plan, and failure to appropriately train and/or supervise their staff, constituted deliberate indifference to Mr. Anderson's serious medical needs, health and safety.

70.     Not only did Defendants fail to provide the necessary medical attention that Mr. Anderson needed in the moment of his acute medical emergency, Defendants also handcuffed Mr. Anderson even though he was visibly ill and not posing a threat. Defendants furthermore used unwarranted and excessive force on Mr. Anderson in the midst of his medical crisis, compounding his needless suffering and increasing the risk of death.

71.     As a direct and proximate result of Defendants' conduct, Mr. Anderson experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

COMPLAINT FOR DAMAGES            -15-

72.     The aforementioned acts and/or omissions of Defendants were willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

**Fourth Claim for Relief**

**42 U.S.C. § 1983 (Deprivation of Substantive Due Process Rights in Violation of Fourteenth Amendment to United States Constitution – Loss of Parent/Child Relationship)**

**(Against all Defendants)**

73.     Plaintiffs re-allege and incorporate by reference the allegations contained in this complaint, as though fully set forth herein.

74.     The aforementioned acts and/or omissions of Defendants in being deliberatively indifferent to Mr. Anderson's serious medical needs, health and safety, violating Mr. Anderson's constitutional rights, and their failure to train, supervise, and/or take other appropriate measures to prevent the acts and/or omissions that caused the untimely and wrongful death of Mr. Anderson deprived Plaintiffs of their liberty interest in a parent-child relationship in violation of their substantive due process rights as defined by the Fourteenth Amendment to the United States Constitution.

75.     As a direct and proximate result of the aforementioned acts and/or omissions of Defendants, Plaintiffs suffered injuries and damages as alleged herein.

76.     The aforementioned acts and/or omissions of Defendants were willful, wanton, malicious, and oppressive, thereby justifying an award to Plaintiffs of exemplary and punitive damages against the id to punish the wrongful conduct alleged herein and to deter such conduct in the future.

**Fifth Claim for Relief**

**42 U.S.C. § 1983 (*Monell* Liability)**

**(Against County of Fresno, CFMG/Wellpath, and HIG)**

77.     Plaintiffs re-allege and incorporate by reference the allegations contained in this complaint, as though fully set forth herein.

78.     The aforementioned acts and/or omissions of Defendants in being deliberatively indifferent to Mr. Anderson's serious medical needs, health and safety and violating Mr. Anderson's civil rights were the direct and proximate result of customs, practices and policies of Defendants County of Fresno,

Wellpath, H.I.G. Capital LLC, and California Forensic Medical Group (aka Correctional Medical Group Companies, Inc. and aka Wellpath), by and through their agencies, employees and/or agents, as alleged herein.

79.    During Mr. Anderson's incarceration, Defendants had inadequate policies, procedures, and practices for identifying inmates in need of medical treatment, providing constitutionally adequate medical treatment, addressing risk of seizures, and staffing.

These inadequate policies, procedures, and practices include, but are not limited to:

a.    Defendants failed to staff the Jail with sufficient numbers of qualified, competent, and appropriately-supervised medical staff to provide adequate medical care to inmates.

b.    Defendants failed to staff the Jail with sufficient numbers of qualified, competent, and appropriately-supervised custodial staff to provide adequate supervision and care to inmates.

c.    Defendants failed to properly train and supervise staff regarding policies, procedures, and practices necessary for the provision of medical treatment, including treatment of seizure disorders.

d.    Defendants failed to ensure staff provided medical treatment meeting standards of care.

e.    Defendants failed to adequately screen and identify inmates with seizure disorders and timely refer them for appropriate housing, medication, assessment and treatment.

f.    Defendants failed to utilize proper screening forms and failed to refer inmates for medical evaluations, provision of necessary medication, and housing assessment in a consistent or timely manner.

g.    Defendants failed to provide adequate medical assessment or treatment, including but not limited to delaying and/or denying the continuation of community-prescribed medications, failing to timely prescribe necessary medications, and failing to appropriately monitor the inmates identified as having a seizure disorder.

COMPLAINT FOR DAMAGES                -17-

h.    Defendants failed to properly house inmates who have a history of seizures in locations that account for their sensitivities to temperature and other conditions.

i.    Defendants failed to implement a system where staff are on-call at all times to receive emergency communications from inmates and to immediately respond to inmate medical emergencies.

j.    Defendants failed to provide timely and appropriate access to inpatient care or emergency hospitalization for inmates in acute medical distress relating to a seizure disorder.

k.    Defendants failed to provide timely and appropriate assessment and crisis intervention for inmates exhibiting signs or symptoms indicating a serious seizure disorder.

Defendants' failure to correct their policies, procedures, and practices regarding seizure disorders and how to respond to inmates experiencing seizures, despite notice of significant and dangerous problems, evidences deliberate indifference in the provision of mental health treatment.

80.    HIG, CFMG/WELLPATH placed their financial interests and profits before their duty and responsibility to provide sufficient and competent medical/mental health care staff to patient/prisoners.

81.    Defendants tacitly encouraged, ratified and/or approved of the acts and/or omissions alleged herein, including by way of their inadequate investigation and conclusion thereto by failing to adequately interview witnesses, improperly weighting evidence and statements, and failing to consider evidence.

82.    Defendants knew that such conduct was unjustified and would result in violations of constitutional rights.

83.    The customs, policies and/or practices of Defendants Fresno County, Wellpath, H.I.G. Capital LLC, and California Forensic Medical Group (Aka Correctional Medical Group Companies, Inc. and aka Wellpath) were a direct and proximate cause of Plaintiffs' injuries and the death of the Mr. Anderson in that Defendants failed to adequately train and supervise its employees and/or agents to prevent the occurrence of the constitutional violations suffered by Plaintiffs and Mr. Anderson, and by other prisoners at the Fresno County Jail. Defendants also failed to promulgate appropriate policies or

COMPLAINT FOR DAMAGES                    -18-

procedures or take other measures to prevent the constitutional violations suffered by Plaintiffs and

Mr. Anderson, and by other inmates at Fresno County Jail.

84.     As a direct and proximate result of the aforementioned customs, policies and/or practices of

Defendants, Mr. Anderson and Plaintiffs suffered injuries and damages as alleged herein.

**Sixth Claim for Relief**

**42 U.S.C. § 12131 et seq. (Title II of the Americans with Disabilities Act)**

**(Against Defendant County of Fresno and Does 1-100)**

85.     Plaintiffs re-allege and incorporate by reference all previous paragraphs as though fully set

forth herein.

86.     Congress enacted the Americans with Disabilities Act ("ADA") upon a finding, among

other things, that "society has tended to isolate and segregate individuals with disabilities" and that such

forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

87.     In response to these findings, Congress explicitly stated that the purpose of the ADA is to

provide "a clear and comprehensive national mandate for the elimination of discrimination against

individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing

discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

88.     Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability

shall, by reason of such disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

42 U.S.C. § 12132.

89.     Under the ADA, Defendant County is mandated to "develop an effective, integrated,

comprehensive system for the delivery of all services to persons with mental disabilities and

developmental disabilities . . ." and to ensure "that the personal and civil rights" of persons who are

receiving services under its aegis are protected.

90.     Because of his severe seizure disorder, Mr. Anderson was a "qualified individual" with an

illness, disability and medical impairments that limited and/or substantially limited his ability to care for

himself and control his physical health condition as defined under the ADA, 42 U.S.C. § 12131(2), and

Section 504 of the Rehabilitation Act ("RA") of 1973, 29 U.S.C. § 794; 28 C.F.R. 42.540(k).[8]

91.    Defendant County is a public entity under Title II of the ADA. 42 U.S.C.§ 12131(1)(A). Title II of the ADA applies generally to jail "services, programs, or activities." 42 U.S.C. § 12132. Defendants County's jails and medical services therefore are covered under Title II of the ADA. Furthermore, respondeat superior liability applies to Title II claims. Defendants County is therefore liable under Title II of the ADA for the unlawful acts of its employees. Under the ADA, Defendant County is mandated to develop an effective, integrated, comprehensive system for the delivery of all services to persons with disabilities, and to ensure that the personal and civil rights of persons who are receiving services under their aegis are protected.

92.    At all material times and as described herein, Mr. Anderson:

  a.    was an individual with a disability;

  b.    was otherwise qualified to participate in or receive the benefit of Defendants' services, programs, or activities, including County jail and medical services, programs, and activities;

  c.    was either excluded from participation in or denied the benefits of the County services, programs or activities or was otherwise discriminated against by County; and

  d.    such exclusion, denial of benefits or discrimination was by reason of his disability.

As described herein, Defendants failed to reasonably accommodate Mr. Anderson's disability in the course of jailing him and denying him medical care, causing him to suffer greater injury in the process than other detainees or arrestees, including death. Defendants' failures to accommodate Mr. Anderson's disability include but are not limited to:

  a.    causing the violation of Mr. Anderson's rights through all customs, policies,

---

[8] The ADA applies to people with seizure disorders since epilepsy is a physiological disorder affecting the neurological system. Under he ADA and Section 504, a person with a disability is someone who has a physical or mental impairment that seriously limits one or more major life activities, or who is regarded as having such impairments. These life activities include breathing, eating, working, going to school. Seizure disorders are disabilities under the ADA. https://www.ada.gov/regs2016/final_rule_adaaa.html

and practices identified above;

b.    failing to use lawful and appropriate policies, practices, and procedures for inmates with seizure disorders;

c.    failure to provide appropriate housing that accommodated Mr. Anderson's disability;

d.    failing to provide Mr. Anderson with competent and appropriate medical care;

e.    failing to institute proper medical precautions for Mr. Anderson;

f.    failing to adhere and deliver prescriptions as ordered by authorized medical personnel, including failure to provide Mr. Anderson with an approved, prescribed and requested seizure medications for him to self-medicate as prescribed by medical personnel and as requested by Mr. Anderson on several occasions;

g.    failing to implement a competent and reliable medical alert system for inmates who require immediate, urgent and necessary medical aid; and

h.    failing to develop an effective, integrated, comprehensive system for the delivery of all services to persons with disabilities, and to ensure that the personal and civil rights of persons who are receiving services under its aegis are protected;

i.    handcuffing and battering Mr. Anderson, thus causing his death, in response to and because of a medical emergency that was a direct result of his covered disability; and

j.    other failures to provide accommodations as the evidence in this case may show.

93.    As a direct and proximate result of Defendants' conduct, Mr. Anderson experienced physical pain, severe emotional distress, and mental anguish during his incarceration at the Jail, as well as the loss of his life and other damages alleged herein.

94.    The aforementioned acts of Defendants were conducted with conscious disregard for the

COMPLAINT FOR DAMAGES         -21-

safety of Plaintiffs and others, and were therefore malicious, wanton, and oppressive. As a result, Defendants' actions justify an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

**Seventh Claim for Relief**

**29 U.S.C. § 794 (Rehabilitation Act)**

**(Against Defendant County of Fresno and Does 1-100)**

95.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

96.     Section 504 of the Rehabilitation Act of 1973 provides in pertinent part: "[N]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits, or be subjected to discrimination under any program or activity receiving federal financial assistance . . . ." 29 U.S.C. § 794.

97.     Mr. Anderson, at all times relevant herein, was a qualified individual with a disability within the meaning of the Rehabilitation Act because he suffered from a severe seizure disorder. *See* 29 U.S.C. § 705(20)(B).

98.     Defendant County "engaged in the business of . . . health care," custody for persons whose "operations" fall within the definition of "program or activity" covered by the Rehabilitation Act, 29 U.S.C. § 794(b).

99.     At all times relevant to this action, Defendant County received federal funding within the meaning of the Rehabilitation Act.

100.    At all material times and as described herein, Mr. Anderson:

        a.     was an individual with a disability;

        b.     was otherwise qualified to participate in or receive the benefit of Defendants' services, programs, or activities, including County jail and medical services, programs, and activities;

        c.     was either excluded from participation in or denied the benefits of the County services, programs or activities or was otherwise discriminated against by County; and

d.      such exclusion, denial of benefits or discrimination was by reason of his
        disability.

101.    As described herein, Mr. Anderson was denied the benefits of services, programs, privileges, advantages, and opportunities to which Fresno County Jail inmates and the general public are entitled as a result of Mr. Anderson's disability, causing him to suffer greater injury in the process than other detainees or arrestees, including death. Defendants' failures to accommodate Mr. Anderson's disability include but are not limited to:

a.      causing the violation of Mr. Anderson's rights through all customs, policies, and practices identified above;

b.      failing to use lawful and appropriate policies, practices, and procedures for inmates with seizure disorders;

c.      failure to provide appropriate housing that accommodated Mr. Anderson's disability;

d.      failing to provide Mr. Anderson with competent and appropriate medical care;

e.      failing to institute proper medical precautions for Mr. Anderson;

f.      failing to adhere and deliver prescriptions as ordered by authorized medical personnel, including failure to provide Mr. Anderson with an approved, prescribed and requested seizure medications for him to self-medicate as prescribed by medical personnel and as requested by Mr. Anderson on several occasions;

g.      failing to implement a competent and reliable medical alert system for inmates who require immediate, urgent and necessary medical aid; and

h.      failing to develop an effective, integrated, comprehensive system for the delivery of all services to persons with disabilities, and to ensure that the personal and civil rights of persons who are receiving services under its aegis are protected;

i.      handcuffing and battering Mr. Anderson, thus causing his death, in response

COMPLAINT FOR DAMAGES                    -23-

to and because of a medical emergency that was a direct result of his covered disability; and

j.    other failures to provide accommodations as the evidence in this case may show.

102.    Defendants knew that it was substantially likely that Mr. Anderson would be harmed but failed to act on that likelihood, and thus acted with deliberate indifference, thereby intentionally discriminating against Mr. Anderson in violation of Section 504 of the Rehabilitation Act.

103.    As a direct and proximate result of Defendant's actions, Mr. Anderson suffered injuries and damages causing great pain and leading to his death, as alleged herein.

## Eighth Claim for Relief

**California State Law (Failure to Furnish/Summon Medical Care)**

**Wrongful Death and Survival Action**

**(Against Defendants County of Fresno, Wellpath, and Does 1-100)**

104.    Plaintiffs re-allege and incorporate by reference all previous paragraphs as though fully set forth herein.

105.    Defendants owed Mr. Anderson a duty of care to provide him immediate medical and mental health care.

106.    The conduct of Defendants alleged herein, including but not limited to the facts that Defendants knew or had reason to know that Mr. Anderson was in need of immediate medical care on or around June 23 and 24, 2020, and that Defendants failed to take reasonable action to summon or provide that care, resulting in Mr. Anderson's suffering and death as alleged herein, violated California state law, including Cal. Govt. Code §§ 844.6 and 845.6.

107.    The failure of Defendants to summon medical care was an omission within the course and scope of their employment. As a direct and proximate result of Defendants' breach, Mr. Anderson suffered injuries and damages causing great pain and leading to his death, as alleged herein.

108.    The failure of Defendants to summon medical care caused the wrongful death of Plaintiffs' son, and entitles them to wrongful-death damages as alleged below.

109.    The aforementioned acts of individual Defendants were conducted with conscious

disregard for the safety of Mr. Anderson and others, and were therefore malicious, wanton, and oppressive. As a result, Defendants' actions justify an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

**Ninth Claim for Relief**

**California Code Civ. Proc. § 377.60 (Wrongful Death)**

**(Against All Defendants and Does 1-100)**

110.    Plaintiffs re-allege and incorporate by reference all previous paragraphs as though fully set forth herein.

111.    Mr. Anderson's death was a direct and proximate result of the aforementioned wrongful and/or negligent acts and/or omissions of Defendants. Defendants' acts and/or omissions thus were also a direct and proximate cause of Plaintiffs' injuries and damages, as alleged herein.

112.    As a direct and proximate result of Defendants' wrongful and/or negligent acts and/or omissions, Plaintiffs incurred expenses for funeral and burial expenses in an amount to be proved.

113.    As a direct and proximate result of Defendants' wrongful and/or negligent acts and/or omissions, Plaintiffs suffered the loss of the services, society, care, and protection of the decedent. Plaintiffs are further entitled to recover prejudgment interest.

114.    As the successor-in-interest of decedent, Plaintiff Doris Anderson is entitled to recover punitive damages against individual Defendants who, with conscious disregard of Mr. Anderson's rights, failed to provide him with health care services meeting the professional standard of practice, and/or failed to adhere to legal and professional standards of correctional supervision and administration.

115.    The aforementioned acts of individual Defendants were conducted with conscious disregard for the safety of Mr. Anderson and others, and were therefore malicious, wanton, and oppressive. As a result, Defendants' actions justify an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

/ / /

/ / /

/ / /

**Tenth Claim for Relief**

**California State Law (Negligence)**

**Survival and Wrongful-Death Action**

**(Against Defendants and Does 1-100)**

116.    Plaintiffs re-allege and incorporate by reference all previous paragraphs as though fully set forth herein.

117.    Defendants failed to comply with professional standards in the treatment, care, and supervision of Mr. Anderson during his incarceration at the Jail. Defendants' failures include, but are not limited to: failing to provide timely and necessary medical treatment; failing to ensure provision of appropriate and necessary medications for Mr. Anderson's seizure disorder; failing to provide medically indicated housing in response to the heat and its effects on Mr. Anderson due to his known seizure disorder; failing to appropriately assess and evaluate seizure risk; failure to summon necessary and appropriate medical care for Decedent; to refrain from unreasonably creating danger or increasing Decedent's risk of harm; placing Mr. Anderson in housing conditions which exacerbated his symptoms; and failing to conduct welfare and safety checks at required intervals.

118.    Defendants also failed to appropriately supervise, review, and ensure the competence of provision of care and treatment to Mr. Anderson by medical and custody staff, and failed to enact appropriate standards and procedures that would have prevented such harm to him.

119.    Together, Defendants acted negligently and improperly, breached their respective duties, and as a direct and proximate result, Plaintiff suffered injuries and damages as alleged herein.

120.    The negligent conduct of Defendants was committed within the course and scope of their employment.

121.    The aforementioned acts of individual Defendants were conducted with conscious disregard for the safety of Mr. Anderson and others, and were therefore malicious, wanton, and oppressive. As a result, Defendants' actions justify an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

/ / /

/ / /

COMPLAINT FOR DAMAGES                -26-

**Eleventh Claim for Relief**

**California Civ. Code § 52.1 (Bane Act)**

**(Against All Defendants)**

122.    Plaintiffs re-allege and incorporate by reference the allegations contained in this complaint, as though fully set forth herein.

123.    By their acts, omissions, customs, and policies, Defendants and Does 1-100 acting in concert/conspiracy, as described above, and with threat, intimidation, and/or coercion, violated Plaintiffs' and Decedent's rights under California Civil Code § 52.1 and the following clearly established rights under the United States Constitution and California Constitution and law:

a.    Decedent's right to be free from excessive force as secured by the Fourth Amendment to the United States Constitution and the California Constitution, Article 1, Sections 7 and 13;

b.    Decedent's right to be free from cruel and unusual punishment, as secured by the Fourteenth Amendment to the United States Constitution with respect to pretrial detainees and the right to be free from cruel or unusual punishment under the California Constitution, Article 1, Section 6;

c.    Decedent's right to be free from deliberate indifference to his serious medical needs while in custody as a pretrial detainee, as secured by the Fourth and Fourteenth Amendments to the United States Constitution and the California Constitution, Article 1, Sections 7 and 13;

d.    Decedent's rights and liberty interests, as an incapacitated criminal defendant, to freedom from incarceration and to timely, restorative treatment, as secured by the Fourteenth Amendment to the United States Constitution and the California Constitution, Article 1, Section 7;

e.    Plaintiffs' right to be free from wrongful government interference with familial relationships and Plaintiffs' right to companionship, society, and support of each other, as secured by the First and Fourteenth Amendments;

f.    The right to enjoy and defend life and liberty; acquire, possess, and protect

property; and pursue and obtain safety, happiness, and privacy, as secured by the
California Constitution, Article 1, Section 1;

g.     Decedent's right to protection from bodily restraint, harm, or personal insult, as
secured by California Civil Code § 43; and

h.     Decedent's right to immediate medical care as required by California Government
Code § 845.6.

124.     Defendants' violations of Plaintiffs' and Decedent's due process rights with deliberate
indifference, in and of themselves constitute violations of the Bane Act. Alternatively, separate from, and
above and beyond, Defendants' attempted interference, interference with, and violation of Plaintiffs' and
Decedent's rights, Defendants violated Plaintiffs' and Decedent's rights by the following conduct, among
other conduct, constituting threat, intimidation, or coercion:

a.     Intentionally and with deliberate indifference, depriving and/or preventing Mr.
Anderson from receiving necessary, life-saving medical and/or psychiatric care and
treatment;

b.     Intentionally and with deliberate indifference, causing Mr. Anderson to languish in
jail without necessary medical/psychiatric/pharmacological care, or even the
required treatment plan, when he was obviously unable to care for his own needs;

c.     Intentionally and with deliberate indifference, causing Mr. Anderson to suffer a life-
threatening medical crisis without properly identifying the symptoms or putting in
place treatment protocols; and

d.     Intentionally and with deliberate indifference, doing and/or permitting
subparagraphs (a) – (c) when it was also obvious that in doing so, Decedent's life
was likely to end needlessly, and Plaintiffs' rights also would be violated.

125.     The threat, intimidation, and coercion described herein were not necessary or inherent to
any legitimate and lawful law enforcement activity. Mr. Anderson's prolonged incarceration in a highly
dangerous jail setting where he was not provided adequate medical care or psychiatric treatment, and
where he depended solely on Defendants for his housing, safety, and timely treatment, constitutes a
situation of threat, intimidation, and coercion.

COMPLAINT FOR DAMAGES       -28-

126.    Further, all of Defendants' violations of duties and rights, and coercive conduct described herein, were volitional acts; none was accidental or merely negligent. Further, each Defendant violated Plaintiffs' and Decedent's rights with the specific intent and purpose to deprive them of their enjoyment of those rights and of the interests protected by those rights.

127.    To the extent this claim is based on a violation of Decedent's rights, it is asserted as a survival claim. To the extent that the violations of rights were done to Plaintiffs, it is asserted as a personal claim. To the extent the violations were done to both Decedent and Plaintiffs, it is asserted as both.

128.    Defendants County of Fresno, CFMG/Wellpath, and HIG are vicariously liable pursuant to Cal. Gov. Code § 815.2 and § 815.4. As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of Plaintiffs' and Decedent's rights under the United States and California Constitutions and law, Plaintiffs sustained injuries and damages, and against each Defendant named in this Count is entitled to relief as set forth above, and punitive damages against all individual Defendants, including all damages and penalties allowed by California Civil Code §§ 52 and 52.1 and California law, three times actual damages, and attorneys' fees.

## Twelfth Claim for Relief

### California State Law (Battery)

### (Against Defendants Fresno County, Mims, and Does 1-100)

129.    Plaintiffs re-allege and incorporate by reference the allegations contained in this complaint, as though fully set forth herein.

130.    Defendants engaged in a battery of Mr. Anderson by handcuffing and violently throwing Mr. Anderson to the floor, thereby touching him without his consent and with intent to harm, where Mr. Anderson was in fact harmed by Defendants' conduct and a reasonable person in Mr. Anderson's situation would have been offended.

131.    As a direct and proximate cause of the aforementioned acts of Defendants, Mr. Anderson was injured as set forth above.

132.    As a direct and proximate result of Defendants' conduct, Plaintiffs sustained wrongful death damages as alleged herein.

133.    The aforementioned acts and/or omissions of Defendants were willful, wanton, malicious,

and oppressive, thereby justifying an award to Mr. Anderson's successor-in-interest of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

1. For compensatory, general and special damages against each Defendant, jointly and severally, in an amount to be proven at trial;

2. For damages related to loss of familial relations as to Plaintiffs Doris Anderson and James Jenkins;

3. Funeral and burial expenses, and incidental expenses not yet fully ascertained;

4. General damages for survival and wrongful-death, including Mr. Anderson's pre-death pain and suffering, and loss of enjoyment of life damages, and for Plaintiffs' physical and emotional pain, emotional distress, hardship, suffering, shock, worry, anxiety, sleeplessness, illness and trauma and suffering, the loss of the services, society, care and protection of the decedent, as well as the loss of financial support and contributions, loss of the present value of future services and contributions, and loss of economic security;

5. Prejudgment interest;

6. For punitive and exemplary damages against each individually named Defendant in an amount appropriate to punish Defendant(s) and deter others from engaging in similar misconduct;

7. For costs of suit and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and as otherwise authorized by statute or law; and

8. For such further relief, as the Court may deem proper.

/ / /

/ / /

/ / /

---

COMPLAINT FOR DAMAGES                    -30-

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury in this action.

Dated: July 23, 2021                    Respectfully Submitted,

                                        HADSELL STORMER RENICK & DAI LLP

                                        THE LAW OFFICES OF JOHN BURTON

                                        LAW OFFICE OF THOMAS C. SEABAUGH

                                        By:   /s/ Dan Stormer
                                                 Dan Stormer
                                                 Hanna Chandoo
                                        Attorneys for Plaintiffs

COMPLAINT FOR DAMAGES            -31-