1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**AKERMAN LLP**
ELLEN S. ROBBINS (SBN 298044)
ellen.robbins@akerman.com
EVELINA GENTRY (SBN 296796)
evelina.gentry@akerman.com
601 West Fifth Street, Suite 300
Los Angeles, CA 90071
Telephone: (213) 688-9500
Facsimile: (213) 627-6342

Attorneys for Defendant
H.I.G. CAPITAL, LLC

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DORIS ANDERSON, Individually and as the Successor in Interest for JAH-QUAVIOUS ANDERSON, Deceased, and JAMES JENKINS,<br><br>       Plaintiffs,<br><br>v.<br><br>COUNTY OF FRESNO, FRESNO SHERIFF-CORONER MARGARET MIMS, FRESNO COUNTY DIRECTOR OF PUBLIC HEALTH DAVID POMAVILLE, CALIFORNIA FORENSIC MEDICAL GROUP (AKA WELLPATH, LLC), HIG CAPITAL LLC, and DOES 1 to 100,<br><br>       Defendants. | Case No. 1:21-cv-01134-DAD-SAB<br><br>The Hon. Dale A. Drozd<br><br>**DEFENDANT H.I.G. CAPITAL LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>**[Notice of Motion to Dismiss First Amended Complaint Filed Concurrently Herewith]**<br><br>**Date: March 15, 2022**<br>**Time: 9:30 a.m.**<br>**Courtroom: 7, Seventh Floor** |

AKERMAN LLP
601 WEST FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1

**TABLE OF CONTENTS**

2

**Page**

3

I.      INTRODUCTION ...................................................................................1

4

II.     PROCEDURAL STATUS.......................................................................3

III.    SUMMARY OF PLAINTIFFS' ALLEGATIONS ...............................3

5

IV.     LEGAL STANDARD.............................................................................7

6

V.      ARGUMENT ..........................................................................................8

7

        A.      The FAC Fails to Allege What HIG Did and How It Is Supposedly Liable ..........8

8

        B.      Plaintiffs' Conclusory *Alter Ego* Allegations Fail to State a Claim Against HIG ...............9

9

        C.      The *Monell* Claim Against HIG Fails as a Matter of Law....................................13

10

                1)      Plaintiffs Have Not and Cannot Allege That HIG Acted Under the Color of State Law.....................13

11

                2)      Plaintiffs Have Not Alleged Proximate Cause...........................................16

12

                3)      Plaintiffs' *Monell* Claim (Count 2) Fails .................................................17

13

        D.      Plaintiffs' Claims for Violations of the ADA and Rehabilitation Act (Counts 6 and 7) Fail...........19

14

        E.      Plaintiffs' Wrongful Death and Negligence Claims (Counts 9 and 10) Fail .........21

        F.      Plaintiffs' Claim for Punitive Damages Must Be Stricken....................................22

15

VI.     LEAVE TO AMEND SHOULD NOT BE ALLOWED ...................................23

16

VII.    CONCLUSION.....................................................................................23

17

18

19

20

21

22

23

24

25

26

27

28

**AKERMAN LLP**

601 WEST FIFTH  STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**HIG'S MOTION TO DISMISS TO FIRST AMENDED COMPLAINT**

62126597;3

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*A.E. ex rel. Hernandez v. County of Tulare,*
5
    666 F.3d 631 (9th Cir. 2012) ...................................................................17

6

*Allphin v. Peter K. Fitness, LLC,*
    2014 WL 6997653 (N.D.Cal. December 11, 2014) ...................................11
7

*Arnold v. Browne,*
8
    27 Cal.App.3d 386 (1972) .......................................................................10

9

*Ashcroft v. Iqbal,*
    129 S.Ct. 1937 (2009)......................................................................... *passim*
10

*Associated Vendors, Inc. v. Oakland Meat Co.,*
11
    210 Cal.App.2d 825 (1962) ................................................................10, 12
12

*Bell Atl. Corp. v. Twombly,*
13
    550 U.S. 544 (2007)........................................................7, 10, 18, 22

14

*Bremer v. Cty. of Contra Costa,*
    2015 WL 5158488 (N.D. Cal. Sept. 2, 2015) ...........................................22
15

16

*Calvert v. Huckins,*
    875 F.Supp. 674 (E.D. Cal. 1995) ....................................................9, 13
17

*Cuviello v. City of Stockton,*
18
    2009 WL 9156144 (E.D. Cal. Jan. 26, 2009) ...........................................14

19

*Dang v. Cross,*
    422 F.3d 800 (9th Cir. 2005)  ...................................................................23
20

*Doe v. United States,*
21
    58 F.3d 494 (9th Cir. 1995) .......................................................................23

22

*Duvall v. County of Kitsap,*
23
    260 F.3d 1124 (9th 2001).................................................................20, 21

24

*Ericson v. Federal Exp. Corp.*
    162 Cal.App.4th 1291 (2008) ...................................................................22
25

26

*Est. of Ricardez v. Cty. of Ventura,*
    2020 WL 3891460 (C.D. Cal. June 24, 2020), *cert. denied sub nom. Ricardez v. Cty. of Ventura,*
27
    2020 WL 7862129 (C.D. Cal. Aug. 6, 2020)................................................ *passim*

28

AKERMAN LLP

601 WEST FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**HIG'S MOTION TO DISMISS TO FIRST AMENDED COMPLAINT**

62126597;3

*Estate of Sarah R. Seybold v. Tazewell County*,
Case No. 1:20-01386, Dkt. No. 43, slip op. (Central Il. Jan. 6, 2022).....................2

*Fetter v. Bonner*,
2014 WL 654575 (E.D. Cal. February 19, 2014) ...............................................21

*Florer v. Congregation Pidyon Shevuyim, N.A.*,
639 F.3d 916 (9th Cir. 2011) ...............................................................14, 15

*Flores v. EMC Mortg. Co.*,
997 F. Supp. 2d 1088 (E.D. Cal. 2014).................................................................8

*Francine Bible-Marshal v. Montgomery County*,
Case No. 4:20-cv-00028,  .......................................................................2

*Franklin v. Fox*,
312 F.3d 423 (9th Cir. 2002) .....................................................................16

*Gen–Probe, Inc. v. Amoco Corp., Inc.*,
926 F.Supp. 948 (S.D. Cal. 1996)..................................................................8

*Harvey v. Harvey*,
949 F.2d 1127 (11th Cir. 1992) ...................................................................14

*Herd v. County of San Bernardino*,
311 F. Supp. 3d 1157 (C.D. Cal. 2018) .......................................................17, 18

*Holmstrand v. Dixon Hous. Partners*,
2011 WL 2631834 (E.D. Cal. June 30, 2011) .................................................14

*Howerton v. Gabica*,
708 F.2d 380 (9th Cir 1983) .....................................................................16

*Inman v. Anderson*,
294 F.Supp.3d 907 (N.D. Cal. 2018) .............................................................17

*Jacoves v. United Merchandising Corp.*,
9 Cal.App.4th 88 (1992) .......................................................................21

*Jaikishan v. Cty. of Sacramento*,
2019 WL 1400122 (E.D. Cal. Mar. 28, 2019) .................................................21

*James v. Hubbard*,
2010 WL 4901827 (E.D.Cal. Nov.23, 2010) ....................................................21

*Johnson v. Baca*,
2013 WL 12131358 (C.D. Cal. 2013).............................................................19

*Kirtley v. Rainey*,
326 F.3d 1088 (9th Cir. 2003) .............................................................14, 15

AKERMAN LLP

601 WEST FIFTH  STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**HIG'S MOTION TO DISMISS TO FIRST AMENDED COMPLAINT**

62126597;3

*Kramer Motors, Inc. v. British Leyland, Ltd.*,
   628 F.2d 1175 (9th Cir. 1980) ...................................................................11

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) .......................................................................8

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) ...................................................................23

*Lopez v. Southern Cal. Rapid Transit Dist.*,
   40 Cal. 3d 780 (1985) .................................................................................22

*Luzon v. Atlas Ins. Agency, Inc.*,
   284 F. Supp. 2d 1261 (D. Haw. 2003) .........................................................2

*Mason v. Cty. of Orange*,
   251 F.R.D. 562 (C.D. Cal. 2008) .................................................................8

*Meadows v. Emett & Chandler*,
   99 Cal. App. 2d 496 (1950) ........................................................................12

*Mid-Century Ins. Co. v. Gardner*,
   9 Cal.App.4th 1205 (1992) .........................................................................12

*Mililani Group, Inc. v. O'Reilly Automotive, Inc.*,
   2012 WL 5932980 (E.D. Cal. 2012) ...........................................................11

*Mitchell v. Dupnik*,
   75 F.3d 517 (9th Cir. 1996) .......................................................................23

*Monaco v. Liberty Life Assur. Co*,
   2007 WL 1140460 (N.D. Cal. Apr. 17, 2007) ...........................................10

*Morgan v. Woessner*,
   997 F.2d 1244 (9th Cir. 1993) ...................................................................23

*Neilson v. Union Bank of California, N.A.*,
   290 F.Supp.2d 1101 (C.D. Cal, 2003) .......................................................10

*Newland v. Dalton*,
   81 F.3d 904 (9th Cir. 1996) .......................................................................23

*Price v. Hawaii*,
   939 F.2d 702 (9th Cir. 1991) .....................................................................14

*Quiroz v. Seventh Ave. Ctr.*,
   140 Cal.App. 4th 1256 (2006) ...................................................................21

*Reason v. City of Richmond*,
   2021 WL 107225 (E.D. Cal. Jan. 12, 2021) ..........................................18, 19

AKERMAN LLP
601 WEST FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

iv

**HIG'S MOTION TO DISMISS TO FIRST AMENDED COMPLAINT**

62126597;3

*Royal v. Ierokomos,*
  2021 WL 3418676 (E.D. Cal. Aug. 5, 2021) ..................................................15, 16

*Ruiz v. Gen. Ins. Co. of Am.,*
  2020 WL 4018274 (E.D. Cal. July 15, 2020) ..................................................10

*Sigmon v. Community Care HMO,*
  234 F.3d 1121 (10th Cir. 2000) ..................................................16

*Simmons v. Navajo Cty., Ariz.,*
  609 F.3d 1011 (9th Cir. 2010) ..................................................20

*Smith v. Wade,*
  461 U.S. 30 (1983) ..................................................23

*Sollberger v. Wachovia Sec., LLC,*
  2010 WL 2674456 (C.D. Cal. June 30, 2010) ..................................................8

*Sonora Diamond Corp. v. Superior Court,*
  83 Cal.App.4th 523 (2000) ..................................................10, 12

*Sutton v. Providence St. Joseph Med. Ctr.,*
  192 F.3d 826 (9th Cir. 1999) ..................................................14

*Swartz v. KPMG LLP,*
  476 F.3d 756 (9th Cir. 2007) ..................................................7

*U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.,*
  971 F.2d 244 (9th Cir. 1992) ..................................................8

*United States v. Bestfoods,*
  524 U.S. 51 (1998) ..................................................11

*Weinrich v. Los Angeles,*
  114 F.3d 976 (9th Cir. 1997) ..................................................20

*West v. Atkins,*
  487 U.S. 42 (1988) ..................................................14

*Whittlestone, Inc. v. Handi-Craft Co.,*
  618 F.3d 970 (9th Cir. 2010) ..................................................23

*Wine Bottle Recycling, LLC v. Niagara Sys. LLC,*
  2013 WL 1120962 (N.D. Cal. Mar. 18, 2013) ..................................................12

*Zukle v. Regents of Univ. of Cal.,*
  166 F.3d 1041 (9th Cir. 1999) ..................................................21

AKERMAN LLP
601 WEST FIFTH  STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**Statutes**

29 U.S.C. § 794............................................................................................................20

42 U.S.C. § 1983..............................................................................................14, 16, 17

42 U.S.C. § 12131.......................................................................................................20

42 U.S.C. § 12132.......................................................................................................20

**Rules**

Fed. R. Civ. Proc. 8.............................................................................................4, 7, 8, 9

Fed. R. Civ. Proc. 11.................................................................................................8, 10

Fed. R. Civ. Proc. 12(b)(2)..................................................................................7, 8, 17

Fed. R. Civ. Proc. 12(f)................................................................................................23

AKERMAN LLP

601 WEST FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**HIG'S MOTION TO DISMISS TO FIRST AMENDED COMPLAINT**

62126597;3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

H.I.G. Capital ("HIG") is a leading global private equity firm and investment manager with an investment portfolio of over 70 companies. HIG is responsible for making investments on behalf of a limited partnership private equity fund and performs diligence and oversight on those investments. Significantly, HIG does not hold any ownership interest in its investment portfolio companies. In 2013, HIG, *through an affiliate*, made an equity investment in California Forensic Medical Group ("CFMG"). In 2018, CFMG, through a merger with another entity, became Wellpath Holdings, Inc. ("Wellpath, Inc."), a medical and behavioral healthcare provider to many different correctional facilities, including the Fresno County Jail ("Fresno Jail").

Notwithstanding HIG's far-removed role as a mere equity sponsor and investment manager, Plaintiffs now seek to hold HIG responsible for the tragic death of Jah-Quavious "Quabo" Anderson claiming that HIG violated Anderson's civil rights and disability rights and wrongfully caused his death. Plaintiffs' misguided and factually unsupported (and unsupportable) theories include casually and mistakenly labeling HIG an *alter ego* of CFMG and Wellpath LLC (another entity - different from the above-mentioned Wellpath Inc.), as well as a state actor. However, Plaintiffs do not - *and cannot* - allege any factual basis for holding HIG liable or responsible for any of the alleged wrongdoing.

The 139-paragraph, 31-page First Amended Complaint ("FAC") contains a laundry list of boilerplate and confusing allegations in an attempt to facially allege some sort of *alter ego* concept to make HIG liable. However, not a single fact is alleged to support Plaintiffs' outlandish notion that HIG, a mere equity sponsor and investment manager overseeing an investment (one of 70 firm investments) in an entity far removed in the corporate structure from CFMG's day-to-day activities at Fresno Jail, should or even could be held legally liable for one inmate's suicide. Indeed, other courts dismissed similar actions against HIG arising from *almost identical allegations*. *See, e.g., Est. of Ricardez v. Cty. of Ventura*, 2020 WL 3891460, at *7 (C.D. Cal. June 24, 2020), *cert. denied sub nom. Ricardez v. Cty. of Ventura*, 2020 WL 7862129 (C.D. Cal. Aug. 6, 2020) (dismissal with prejudice for failure to allege an *alter ego* or agency relationship between HIG and CFMG and for

AKERMAN LLP

601 WEST FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**HIG'S MOTION TO DISMISS TO FIRST AMENDED COMPLAINT**

62126597;3

failure to allege that HIG acted under color of law); *see also Francine Bible-Marshal v. Montgomery County*, Case No. 4:20-cv-00028, Dkt. No. 47, slip op. at p. 7 (S.D. Tex. Sept. 28, 2020) (inmate death case, dismissing a similar complaint as to HIG); *Estate of Sarah R. Seybold v. Tazewell County*, Case No. 1:20-01386, Dkt. No. 43, slip op. (Central Il. Jan. 6, 2022) (same).[1]

Here, Plaintiffs' state actor allegations are even more deficient. Indeed, the FAC is *completely* devoid of allegations supporting the theory that HIG was either a state actor or acting under color of law. Additionally, Plaintiffs have not – nor can they – allege that HIG was the proximate cause of the alleged constitutional violations. Plaintiffs also allege a violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). However, Plaintiffs' ADA and RA claims do not allege any HIG-specific conduct, nor do they make it clear how these statutes even apply to HIG. Plaintiffs' Wrongful Death and Negligence claims are similarly deficient and lack even the most cursory allegations against HIG.

Tellingly, because Plaintiffs cannot allege any specific conduct by HIG to tie it to the purported constitutional violations, they resort to the artifice of simply lumping HIG with CFMG, Wellpath LLC, and other defendants throughout the entire FAC. Indeed, the FAC should be dismissed based on the striking absence of any adequate factual allegations to support the claims asserted against HIG. *See Luzon v. Atlas Ins. Agency, Inc.,* 284 F. Supp. 2d 1261, 1263 (D. Haw. 2003) (dismissing complaint and expressing doubt about plaintiffs' good faith basis for alleging violations of constitutional rights by a private company where plaintiff fails to allege facts demonstrating state action).

In sum, Plaintiffs fail to articulate any viable claims against HIG. This is not surprising because HIG lacks any proximate – or, in reality, actual – connection to the conduct and procedures alleged by Plaintiffs. Because Plaintiffs have not and cannot meet their burden of pleading with the requisite factual specificity to withstand a motion to dismiss, HIG respectfully requests that the Court grant its Motion and dismiss all claims against HIG with prejudice.

---

[1] Pursuant to L. R. 133 (i)(3), the *Bible-Marshall* and *Seybold* opinions are attached hereto as Exhibit **A** and **B**, respectively.

AKERMAN LLP

601 WEST FIFTH  STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**HIG'S MOTION TO DISMISS TO FIRST AMENDED COMPLAINT**
62126597;3

AKERMAN LLP

601 WEST FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

## II.    PROCEDURAL STATUS

On July 23, 2021, Plaintiffs filed a Complaint against HIG, among other defendants. (Dkt. No. 1). The Complaint alleged seven claims against HIG for: (1) Failure to Protect from Harm in Violation of the Fourteenth Amendment to the United States Constitution (claim III); (2) Deprivation of Substantive Due Process Rights in Violation of the Fourteenth Amendment to the United States Constitution – Loss of Parent/Child Relationship (claim IV); (3) *Monell* Liability (claim V); (4) Wrongful Death (claim IX); (5) Negligence (claim X); and (6) Bane Act (claim XI). (*Id*.). Following a meet and confer regarding HIG's contemplated Motion to Dismiss, on December 1, 2021, Plaintiffs filed their First Amended Complaint. (Dkt. No. 20). Subsequently, the parties again met and conferred regarding HIG's contemplated motion to dismiss. During the meet and confer efforts, Plaintiffs clarified that the FAC only alleges the following claims against HIG: (1) *Monell* Liability (claim V); (2) violation of the ADA (claim VI); (3) violation of the RA (claim VII); (4) Wrongful Death (count IX); and (5) Negligence (count X). Accordingly, only these claims are subject to the present Motion.

## III.    SUMMARY OF PLAINTIFFS' ALLEGATIONS

The FAC alleges that Anderson suffered from a seizure disorder, which was controlled with medications. (FAC., ¶¶ 1, 26). Heat and stress allegedly triggered Anderson's seizures. (*Id*.) From 2011-2020 Anderson was incarcerated in Fresno Jail "from time to time." (*Id*., ¶ 27).

On June 22, 2020, Anderson again ended up in Fresno Jail. (*Id*., ¶ 28). On intake, "the medical staff charted that Anderson had a history of epilepsy and proscribed him daily seizure medication." (*Id*., ¶ 29). Anderson "was housed in general population." (*Id*., ¶¶ 29, 30). On June 23, 2020, Anderson sought to be moved to "a cooler cell" by turning in "an inmate request form" to the guard station. (*Id*., ¶ 31). The FAC concludes that "[m]edical and custodial staff failed to accommodate Mr. Anderson's serious medical condition by housing him in a medical ward with adequate ventilation and air conditioning, despite knowledge and documentation of his special needs." (*Id*., ¶¶ 29, 35)

On June 24, 2020, officers on duty responded to Anderson "having a possible seizure." (*Id*., ¶ 37). When the officers arrived, Anderson "was moving his body in an abnormal manner … flailing his arms… [and] was verbally non responsive (SIC)." (*Id*., ¶ 38). The officers inquired with Anderson

**HIG'S MOTION TO DISMISS TO FIRST AMENDED COMPLAINT**
62126597;3

what drugs he had taken and walked him out of his cell. (*Id.*) The custody staff and nurses attributed Anderson's symptoms to drugs and thought he was experiencing "excited delirium." (*Id.*) When the officers and nurses noticed that Anderson was not breathing, they commenced CPR compressions and called for an ambulance. (*Id.*, ¶ 41). After the EMS staff arrived, they "took over CPR, and transported [Anderson] to the hospital, where he was pronounced dead." (*Id.*)

Plaintiffs assert that CFMG is "a California corporation" "now known as Wellpath" which pursuant to a contract with the County of Fresno provides medical and mental health services to the Fresno Jail. (*Id.*, ¶¶ 13, 42). Plaintiffs allege that HIG is a private equity firm which "is the owner, manager, and partner" of CFMG. (*Id.*, ¶¶ 14, 15, 42). Plaintiffs then aver that "CFMG/ Wellpath … act[s] on behalf of [HIG]" and concludes that "HIG is the *alter ego* of CFMG/Wellpath, and/or alternatively CFMG/Wellpath act on behalf of HIG who have control over them." (*Id.*, ¶ 14).

To support this far-reaching *alter ego* conclusion (which merely recites the definition of the *alter ego* doctrine), Plaintiffs make a handful of conclusory, boilerplate, and contradictory allegations that run afoul of Rule 8 and *alter ego* law, and essentially treat HIG, Wellpath LLC, and CFMG -- three different companies – as one and the same. Right at the outset, Plaintiffs assert that "Wellpath was and is owned and controlled by HIG." (*Id.*, ¶ 45). This allegation is immediately contradicted by a press release referenced in the FAC, which provides that *an affiliate* of HIG, not HIG itself, acquired Correct Care Solutions. (*See* Fn. No. 2).[2] Plaintiffs further aver that HIG "place[s] its in-house professional and expertise as board members of Wellpath to ensure their control over Wellpath." (*Id.*, ¶¶ 46-47). Plaintiffs then summarily conclude that "[t]here is unity of interest and ownership such that the separate personalities of HIG and Wellpath no longer exist as Wellpath and their employees and agents act with the consent, management, approval, ratification and direction of HIG." (*Id.*) But

---

[2] Throughout the FAC, Plaintiffs incorporate and cite to HIG's Press Release No. 1128. (FAC, ¶¶ 41, 49-51; Fn. Nos. 2, 5-7). However, the link to the Press Release No. 1128 provided in the FAC, Fn. No. 2, is not operative. For the Court's convenience, the operative link to the Press Release No. 1128 is as follows: https://higcapital.br.com/news/release/correct-care-solutions-and-correctional-medical-group-companies-join-forces-to-deliver-best-in-class-healthcare Additionally, a copy of the Press Release No. 1128 is attached hereto as Exhibit **C**.

**HIG'S MOTION TO DISMISS TO FIRST AMENDED COMPLAINT**

62126597;3

AKERMAN LLP

601 WEST FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

significantly, this sweeping conclusion – a mere recitation of the *alter ego* legal standard – is not supported by a single fact.

Likewise, without any factual support, Plaintiffs claim that "[HIG has] adjusted its private equity fund investments and operational structure to capitalize on sick and mentally-ill inmates in jail systems across California." (*Id.*, ¶ 48). Plaintiffs also allege that "[HIG's] use of Wellpath is but a mere shell, an instrumentality or conduit for the business of financially profiting from providing medical care to the sick, injured and mentally ill in jails through these shell companies" and "uses the corporate entity as a shield against personal liability and harm caused to inmates." (*Id.*, ¶¶ 48, 52). Plaintiffs' allegations are confusing; it is not clear whether Plaintiffs allege that HIG uses Wellpath as a shell, whether HIG is a shell or whether HIG is the *alter ego* CFMG or the other way around. Nevertheless, Plaintiffs complete the "*alter ego*" element checklist by concluding that "[r]ecognition of [HIG's] separate corporate entity would promote injustice and defeat the rights and equities of persons such as [Anderson] and Plaintiffs." (*Id.*, ¶ 53).

Plaintiffs' apparent efforts to set forth agency, employee-servant, partnership, joint-venture, and co-conspiracy theories are limited to the following barebone wholly conclusory sentence: "each Defendant was at all material times an agent, servant, employee, partner, joint venturer (SIC) co-conspirator, and/or *alter ego* of the remaining Defendants, and in doing the acts and omissions alleged, was acting within the course and scope of those relationships." (*Id.*, ¶ 18).

With respect to the purported state actor allegations, Plaintiffs simply conclude that "CFMG, now known as Wellpath and HIG … *provide a governmental function* and stand in the same capacity as County of Fresno in carrying out their duties at the Fresno County Jail." (*Id.*, ¶¶ 13, 66).

At that point, Plaintiffs give up any pretense of even trying to plead with the required specificity. Other than the allegations identified above, the FAC lacks any non-boilerplate factual allegations against HIG specifically; instead, throughout the entirety of the remaining 80 or so paragraphs of the FAC, Plaintiffs refer to HIG, as "Defendants."

With respect to the underlying constitutional violation, Plaintiffs likewise only generally allege that for example, "Defendants knew or should have known that Mr. Anderson had a serious medical

AKERMAN LLP

601 WEST FIFTH  STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**HIG'S MOTION TO DISMISS TO FIRST AMENDED COMPLAINT**

condition and required appropriate medical treatment and housing accommodations," "Defendants knew or should have known that on June 24, 2020, Mr. Anderson was having one or more seizures in his cell and required prompt and emergent care," "Defendants' [failure] to train, supervise and/or promulgate appropriate policies and procedures in order to provide treatment and identify [the] risk of seizures, constituted deliberate indifference to Mr. Anderson's serious medical needs, health, and safety," and Anderson's death was "a direct and proximate result of Defendants' conduct." (*Id.*, ¶¶ 55-63). Not only are these statements illogical – (*e.g.*, how could an equity sponsor like HIG possibly be responsible for such granular details in a single facility?) – but also Plaintiffs' collectively-pled conclusory allegations make it impossible for HIG to decipher what is alleged against them specifically, in what conduct they allegedly engaged, and/or why they are alleged to be responsible for Anderson's death.

Plaintiffs' *Monell* claim is likewise replete with boilerplate allegations directed at the omnibus "Defendants." (*Id.*, ¶¶ 83-90). The FAC alleges a laundry list of purported customs, policies, and practices at Fresno Jail, which were purportedly directed not only by the County of Fresno but also by HIG, among other defendants. (*Id.*, ¶ 84). But, none of Plaintiffs' allegations is supported by a single "fact" regarding how HIG was purportedly involved in any of these tasks. Indeed, Plaintiffs only set forth two boilerplate allegations against HIG, *i.e.*, "HIG, CFMG/WELLPATH placed their financial interests and profits before their duty and responsibility to provide sufficient and competent medical/mental health care staff to patient/prisoners" and that "[t]he customs, policies and/or practices of Defendants Fresno County, Wellpath, H.I.G. Capital LLC, and California Forensic Medical Group (Aka Correctional Medical Group Companies, Inc. and aka Wellpath) were a direct and proximate cause of Plaintiffs' injuries and the death of the [SIC] Mr. Anderson." (*Id.*, ¶¶ 86, 89). Plaintiffs then conclude that "[a]s a direct result and proximate result of the aforementioned customs, policies and/or practices of Defendants, Mr. Anderson and Plaintiffs suffered injuries and damages as alleged herein." (*Id.*, ¶ 90).

In similar fashion, Plaintiffs' ADA and RA claims also fail to allege any HIG-specific conduct. But, even more confusingly, these claims appear to set forth allegations against only defendant Fresno

County and merely mention the omnibus "Defendants" in a few paragraphs. (*Id.*, ¶¶ 92-109).

Not surprisingly, Plaintiffs' Wrongful Death claim is similarly directed to the omnibus "Defendants" and does not set forth any HIG-specific allegations. What is more, the entirety of the Wrongful Death allegations is limited to several statements that "[a]s a direct and proximate result of Defendants' wrongful and/or negligent acts and/or omissions, Plaintiffs suffered [damages]." (*Id.*, ¶¶117-121). Likewise, Plaintiffs' Negligence claim is replete with conclusions, including that "Defendants failed to comply with professional standards … failed to appropriately supervise … and ensure the competence of provision of care and treatment to Mr. Anderson." (*Id.*, ¶¶ 123-124). Plaintiffs then boldly conclude that "Defendants acted negligently and improperly, breached their respective duties, and as a direct and proximate result, Plaintiff suffered injuries and damages as alleged herein." (*Id.*, ¶ 125). These general allegations against "Defendants" are clearly insufficient to put HIG on notice of its own purported wrongdoing.

The wholesale absence of substantive factual allegations identifying any bases to hold HIG liable for Plaintiffs' claims clearly demonstrates that HIG is entitled to dismissal of the FAC with prejudice.

## IV.   LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A complaint can survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A claim may be dismissed with prejudice if "amendment would be futile." *Swartz v. KPMG LLP*, 476 F.3d

AKERMAN LLP

601 WEST FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**HIG'S MOTION TO DISMISS TO FIRST AMENDED COMPLAINT**

756, 761 (9th Cir. 2007) (citing Albrecht v. Lund, 845 F.2d 193, 197 (9th Cir. 1988)).

When deciding a motion to dismiss under Rule 12(b)(6), a court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688-689 (9th Cir. 2001) (stating that on a Rule 12(b)(6) motion, a court "may take judicial notice of matters of public record").

Here, Plaintiffs do not even approach the line between possibility and plausibility, because they fail to plead *any* specific allegations – factual or otherwise – of HIG's alleged wrongdoing. The few allegations they do plead consist of mere labels, conclusions and regurgitation of the elements of *alter ego.* Based on the wholesale failure to plead any ultimate facts against HIG, this Court should dismiss Plaintiffs' FAC as a matter of law.

## V.   ARGUMENT

### A.   The FAC Fails to Allege What HIG Did and How It Is Supposedly Liable

As an initial matter, throughout the FAC, Plaintiffs fail to set forth any specific, factual allegations regarding HIG's purported wrongdoing. Instead, Plaintiffs repeatedly and impermissibly lump HIG with other Defendants. Basic pleading rules require much more. The FAC is a textbook example of a "shotgun" pleading. No plaintiff "suing multiple defendants" may simply "lump[] defendants together"; but, instead "must allege the basis of [the] claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2)." *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1103 (E.D. Cal. 2014) (emphasis added) (internal quotation omitted.); *see also Sollberger v. Wachovia Sec., LLC,* 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010) (granting motion to dismiss where the complaint impermissibly lumped together claims and defendants and each claim incorporated 197 other paragraphs "as if fully set forth [t]herein"); *Mason v. Cty. of Orange*, 251 F.R.D. 562, 563 (C.D. Cal. 2008) (granting a motion to dismiss and holding that the complaint raised questions whether Plaintiffs violated Rule 11 where each claim generally realleged all the preceding allegations and was alleged against all defendants, regardless if the facts alleged supported it); *Gen–Probe, Inc. v. Amoco*

62126597;3

AKERMAN LLP

601 WEST FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

*Corp., Inc.*, 926 F.Supp. 948, 961 (S.D. Cal. 1996) (dismissing complaint for lumping together multiple defendants in contravention of Rule 8(a)).

As a result of Plaintiffs' shotgun pleading, it is virtually impossible to know which allegations are intended to support which claim(s) for relief against HIG. Throughout the entire FAC, Plaintiffs group HIG with other defendants and refer to them jointly as the "Defendants" when alleging the supposed misconduct. (*See, e.g.*, FAC, ¶¶ 17-18, 55-63, 66-67, 70-78, 80-82, 85, 87-90, 98-100, 106-109, 111-115, 117-121, 123-127). Indeed, except for the few initial boilerplate and wholly conclusory allegations, the FAC lacks any allegations of HIG's specific conduct or alleged wrongdoing.

In sum, Plaintiffs fail to identify any specific conduct by HIG that forms the basis for this lawsuit or to allow the Court to draw the reasonable inference that the alleged misconduct satisfies standards required to find HIG liable for the specific wrongs alleged. Plaintiffs' attempt to circumvent their basic pleading obligations through lumping HIG with other defendants, only some of whom had direct involvement with Anderson, is contrary to well-established, basic pleading principles. This abject pleading failure violates fundamental rules of fairness and fails to put HIG on notice of the claims against them, as required by Rule 8(a). Plaintiffs' failure to plead the liability of HIG with the requisite specificity warrants dismissal.

## B.   Plaintiffs' Conclusory *Alter Ego* Allegations Fail to State a Claim Against HIG

As shown above, Plaintiffs' overarching *alter ego* allegations seeking to make HIG liable for CMFG's actions and, thereby, liable for the events at a single jail managed by CMFG, are conclusory at best, if not entirely absent. *See supra* at Sec. III. Plaintiffs allege no facts to satisfy either predicate element to their *alter ego* theory of liability. Instead, they rely on bare legal and factual conclusions. As this Court has recognized, disregarding the corporate entity is an "extreme remedy" that requires "exceptional circumstances." *Calvert v. Huckins,* 875 F.Supp. 674, 678 (E.D. Cal. 1995). Thus, courts require "clear evidence" of two threshold elements to support allegations of *alter ego* liability. *Id.* Plaintiffs have failed to allege either sufficiently.

First, there must be such a *unity of interest and ownership* between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality

AKERMAN LLP

601 WEST FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**HIG'S MOTION TO DISMISS TO FIRST AMENDED COMPLAINT**
62126597;3

exist. Second, there must be *an inequitable result* if the acts in question are treated as those of the corporation alone. *Sonora Diamond Corp. v. Superior Court,* 83 Cal.App.4th 523, 538 (2000); *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1115 (C.D. Cal, 2003) (same). "Underlying both of these factors is a general presumption in favor of respecting the corporate entity." *Ruiz v. Gen. Ins. Co. of Am.*, 2020 WL 4018274, at *4 (E.D. Cal. July 15, 2020) (granting motion to dismiss on *alter ego* grounds) (citing to *Calvert,* 875 F. Supp. at 678). Thus, merely parroting the elements and listing the factors without factual support – as Plaintiffs have done repeatedly and continuously here – is wholly inadequate. Indeed, it is firmly settled that "conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege, *specifically,* both elements of alter ego liability, *as well as facts supporting each*." *Neilson,* 290 F. Supp. 2d at 1116 (emphasis added); *Twombly,* 550 U.S. at 555 (A complaint must be more than "a formulaic recitation of the elements of a cause of action.").

The first condition of *alter ego* liability requires allegations of facts showing such a unity of interest and ownership between the corporation and the individual such that separate personalities do not exist. *Monaco v. Liberty Life Assur. Co*, 2007 WL 1140460, at *4 (N.D. Cal. Apr. 17, 2007). Facts necessary to show the first condition include: commingling of funds, failure to maintain minutes or adequate corporate records, identification of the equitable owners with the domination and control of the two entities, the use of the same office or business locations, the identical equitable ownership of the two entities, the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual, and failure to adequately capitalize a corporation. *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal.App.2d 825, 838-40 (1962); *Arnold v. Browne*, 27 Cal.App.3d 386 (1972). Plaintiffs plead no such facts (nor could they consistent with their Rule 11 obligations) such that any reasonable inference could be drawn that the alleged misconduct satisfies the stringent standard for *alter ego*. *See Iqbal*, 556 U.S. at 663.

Instead, Plaintiffs make only generic and boilerplate allegations of the unity of interest between HIG and CFMG, which is inconsistently referred to as "CFMG," "Wellpath," and "CFMG/ Wellpath." (FAC, ¶¶ 45-53). Plaintiffs assert that "Wellpath was and is owned and controlled by HIG Capital."

**HIG'S MOTION TO DISMISS TO FIRST AMENDED COMPLAINT**
62126597;3

AKERMAN LLP

601 WEST FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

(*Id.*, ¶ 45). This allegation is immediately contradicted by a press release referenced in the FAC, which provides that *an affiliate* of HIG, not HIG itself, acquired Correct Care Solutions (not CFMG). (*See* Fn. No. 2) Plaintiffs' allegations totally ignore the distinction between HIG and that affiliate and, against basic principles of corporate separateness, treat both entities as one and the same throughout the FAC. (*E.g.*, *id.*, ¶¶ 45, 48-50). Additionally, Plaintiffs make only boilerplate allegations of the purported unity of interest between HIG and Wellpath arising from "HIG placing its in-house professional and expertise as board members of Wellpath to ensure their control over Wellpath." (*Id.*, ¶¶ 46-47). However, it is settled that an overlap between two companies' directors or executive leadership alone is not suggestive of a unity of interest and ownership but rather is merely indicative of intercorporate connections. *See, e.g.*, *Kramer Motors, Inc. v. British Leyland, Ltd.,* 628 F.2d 1175, 1177 (9th Cir. 1980) (holding there was no *alter ego* relationship where some directors for one entity sat on the board of the other). In the absence of evidence of *actual control*, courts generally presume that directors can and do "change hats" to represent each corporation separately, despite their overlapping obligations as officers or directors for more than one entity. *United States v. Bestfoods,* 524 U.S. 51, 69 (1998); *Allphin v. Peter K. Fitness, LLC,* 2014 WL 6997653, at *5 (N.D.Cal. December 11, 2014) (citation omitted). Here, the FAC does not provide any facts, let alone purported evidence, supporting HIG's actual control over CFMG.

Apart from allegations of shared board members, Plaintiffs present only sparse boilerplate allegations taken straight from the *alter ego* playbook, including that "CFMG/Wellpath [employees] act on behalf of HIG and CFMG/Wellpath. HIG is the alter ego of CFMG/Wellpath, and/or alternatively CFMG/Wellpath act on behalf of HIG who have control over them;" "[t]here is unity of interest and ownership such that the separate personalities of HIG and Wellpath no longer exist as Wellpath and their employees and agents act with the consent, management, approval, ratification and direction of HIG;" "HIG renamed CCS-CMGC 'Wellpath' … for purpose of carrying HIG's ownership and financial interest …and so HIG controls the assets and financial gains while Wellpath assume (sic) the liabilities," "HIG's use of Wellpath is but a mere shell;" and "HIG uses the corporate entity as a shield against personal liability." (FAC, ¶¶ 14, 45-46). Such conclusory allegations, unsupported by any specific facts, are

**HIG'S MOTION TO DISMISS TO FIRST AMENDED COMPLAINT**

62126597;3

AKERMAN LLP

601 WEST FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

insufficient to adequately allege the unity of interest prong of the *alter ego* claim. *See e.g., Mililani Group, Inc. v. O'Reilly Automotive, Inc*., 2012 WL 5932980 *2 (E.D. Cal. 2012) (granting motion to dismiss and reasoning that allegations that entity operated at "will and whim" of related entity, had no separate corporate office, had no management employees, and that related entity made "day to day decisions," were "too broad and insufficient to show a unity of interest and ownership."). Wholly absent from the FAC is a single allegation of commingling of funds, failure to maintain records, failure to observe corporate formalities or indicia of disregarding the corporate form. California law plainly requires more. *See, e.g., Wine Bottle Recycling, LLC v. Niagara Sys*. LLC, 2013 WL 1120962, at *9 (N.D. Cal. Mar. 18, 2013) (mere allegation of relevant factors in the absence of specific factual allegations are insufficient).

The opinion in *Estate of Ricardez, supra* is particularly instructive. 2020 WL 3891460, at *2. There, considering almost identical allegations against HIG, the Hon. J. F. Walter of the Central District of California held that "Plaintiffs have failed to sufficiently allege that HIG is the alter ego of CMFG" where they failed to allege any facts demonstrating the *alter ego* factors enumerated in *Associated Vendors* and, instead, only relied on conclusory allegations. (*Id*., pp. 5-6). Further, the court in *Ricardez* also found that plaintiffs' conclusory allegations were contradicted by certain press releases relied on in their complaint. *Ricardez,* 2020 WL 3891460, at *6 (Fn. 5). The same is true here.

The second element of *alter ego* liability requires that an inequitable result occur by the recognition of the corporate form. *Sonora Diamond Corp.*, Cal.App. 4th at 539 (2000). California courts generally require evidence of some bad faith conduct that makes it inequitable to recognize the corporate form. *Mid-Century Ins. Co. v. Gardner*, 9 Cal.App.4th 1205, 1213 (1992). Indeed, "[t]he rule is firmly settled that no reliance can be had on this [alter ego] theory in the absence of *pleading* that recognition of the corporate entity *would sanction a fraud or promote injustice.... a plaintiff must plead those factors in order to state a cause of action* against individual defendants." *Meadows v. Emett & Chandler,* 99 Cal. App. 2d 496, 499 (1950) (emphases in original and added) (internal citations omitted). Indeed, in granting the defendants' motion to dismiss, this Court in *Calvert*, *supra*, 875 F.Supp. at 679, held:

> Even if plaintiffs made a sufficient prima facie showing of control, defendants' motion would still be granted since plaintiffs have produced no evidence whatsoever going to the second requirement for piercing the corporate veil – that failure to do so would

> sanction a fraud or promote injustice. Plaintiffs make no allegations of fraud or similar misdeeds. There is not even a suggestion that [the subsidiary] is undercapitalized . . . or that efforts have been made by the [parent] to strip [the subsidiary] of assets in order to avoid liability. . . . Under these circumstances, plaintiffs have failed to make any showing at all that refusal to pierce the corporate veil will result in any injustice or unfairness.

(Internal quotes and citations omitted; brackets added).

Similarly, here, Plaintiffs' FAC falls woefully short of establishing any inequitable result arising from recognition of HIG's corporate form. Plaintiffs' bad faith allegations are limited to the following wholly conclusory paragraph: "[r]ecognition of HIG as a separate corporate entity would promote injustice and defeat the rights and equities of persons such as Mr. Anderson and Plaintiffs; it would enable and facilitate continued Wellpath unconstitutional conduct, practices, customs and policies, actions and inactions that harm this particularly vulnerable jail population and discourage abatement of these unconstitutional actions and inactions." (FAC, ¶ 53). Other than this very generic allegation (which merely again repeats the *alter ego* standard), there are no "facts" pleaded anywhere regarding the supposed inequity that would "arise" from not holding HIG liable for the acts of a far downstream entity or entities of an affiliate. *Ricardez*, 2020 WL 3891460, at \*5. Further, what is missing is the "factual content [that] allows the court to draw the reasonable inference" that the alleged misconduct satisfies the "stringent standard" for constitutional violations. *Iqbal*, 556 U.S. at 663.

Accordingly, because Plaintiffs have failed to adequately allege an *alter ego* relationship between HIG and CMFG or Wellpath LLC, Plaintiffs have failed to state a claim against HIG and, thus, Plaintiffs' claims against HIG must be dismissed.[3]

## C.   The *Monell* Claim Against HIG Fails as a Matter of Law

### 1)   Plaintiffs Have Not and Cannot Allege That HIG Acted Under the Color of State Law

Plaintiffs have not and cannot allege that HIG was a "state actor," which is necessary to set forth a Section 1983 claim.

---

[3] Plaintiffs' single reference to agency, joint venture, co-conspiracy, and ratification theories in Paragraph 18 of the FAC is insufficient to plead these theories adequately. *See Iqbal*, 556 U.S. at 677 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

AKERMAN LLP
601 WEST FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

A claim under Section 1983 requires a deprivation of a constitutional right under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Private individuals and entities not affiliated with a state or municipal government generally do not act "under color of state law." *See Florer v. Congregation Pidyon Shevuyim, N.A.,* 639 F.3d 916, 922 (9th Cir. 2011) (a private organization that contracted with a state prison was not a state actor); *Kirtley v. Rainey,* 326 F.3d 1088, 1092 (9th Cir. 2003) (guardian *ad litem* appointed to represent a child in a state court custody proceeding did not act under color of state law); *see also Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 843 (9th Cir. 1999) (hospital was not a state actor under Section 1983 claim); *Holmstrand v. Dixon Hous. Partners,* 2011 WL 2631834, at *4 (E.D. Cal. June 30, 2011) (private investors who co-owned subsidized apartments were not state actors); *Cuviello v. City of Stockton*, 2009 WL 9156144, at *23 (E.D. Cal. Jan. 26, 2009) (private company leasing and managing the Stockton Arena was not a state actor).

Analysis of this issue must "start with the presumption that private conduct does not constitute governmental action[,]" *Sutton v.Provdence St. Joseph Med. Ctr.* 192 F.3d at 836, because "[o]nly in *rare* circumstances can a private party be viewed as a 'state actor' for section 1983 purposes[]" *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) (emphasis added). Moreover, because "private parties are not generally acting under color of state law," it is settled that "conclusory allegations unsupported by facts, will be rejected as insufficient to state a claim under the Civil Rights Act." *Price v. Hawaii*, 939 F.2d 702, 707-708 (9th Cir. 1991). That well describes Plaintiffs' allegations in their entirety.

The actions of a private entity may only properly be attributed to the government for purposes of Section 1983 if, at the time of an alleged constitutional violation, (1) the private actor was performing a public function; (2) the private actor was engaged in joint activity with the government; (3) the private party acted under governmental compulsion or coercion; or (4) there was a sufficient nexus between the government and the private actor. *Kirtley*, 326 F.3d at 1092. Plaintiffs have the burden to demonstrate that HIG was a state actor. *Id.*; *see also Florer,* 639 F.3d at 922. They fail.

Plaintiffs have failed to allege properly – nor could they – that HIG is a state actor under any of the tests mentioned above. Plaintiffs' proclamation that "CFMG, now known as Wellpath and HIG

AKERMAN LLP

601 WEST FIFTH  STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**HIG'S MOTION TO DISMISS TO FIRST AMENDED COMPLAINT**

… provide a governmental function and stand in the same capacity as County of Fresno in carrying out their duties at the Fresno County Jail," (FAC, ¶ 13), is not only inaccurate as CFMG is <u>not</u> known as HIG, but also it is unsupported by any facts. If this is Plaintiffs' attempt to meet the public function test, they fail miserably. Under the public function test, a plaintiff must establish that the private party is exercising functions traditionally and exclusively reserved to the state. *See Kirtley*, 326 F.3d at 1093. But Plaintiffs do not allege <u>any facts</u> to support a public function theory of state actor liability. Indeed, it is unclear from the FAC what HIG' alleged "function" was – in this context, or even at all. Additionally, Plaintiffs' claim that "[e]ach individual and each Doe defendant acted under color of law and within the scope of his or her agency and employment for Defendants, and in some manner contributed to the death of Decedent, or otherwise caused the deprivation of Plaintiffs' and Decedent's constitutional rights and other harm." (FAC, ¶ 17). To the extent this allegation is directed towards HIG, is, like many of the allegations against HIG, unsupported by any facts. Indeed, the *Ricardez* court found that similarly "vague and conclusory allegations fail to satisfy any of the four tests to determine that a private party is acting under color of law." *Ricardez*, 2020 WL 3891460, at *6; *see also Royal v. Ierokomos,* 2021 WL 3418676, at *3 (E.D. Cal. Aug. 5, 2021) (dismissing a 1983 claim against a private party where the plaintiff failed to make even a conclusory allegation that the private party was a state actor) (citing to *Felix v. Casey*, 2021 WL 2209828, at *2 (E.D. Cal. June 1, 2021) [dismissing conclusory state actor allegations against private parties]).

Furthermore, Plaintiffs contradict their purported state actor allegations by their detailed allegations that HIG is a private equity firm, which (through an affiliate) made an equity investment in CFMG. (FAC, ¶¶ 42, 47-49, Fn. Nos. 2, 5-7.) The press release incorporated into the FAC clearly establishes that "[HIG] is a leading global private equity investment firm with more than $27 billion of equity capital under management. [HIG] specializes in providing both debt and equity capital to small and mid-sized companies, utilizing a flexible and operationally focused / value-added approach." (*See* Fn. Nos. 2-7). The press release further sets forth that "one of [HIG's] affiliates has acquired Correct Care Solutions," that the acquisition "represents [HIG's] 23rd control investment in healthcare since 2008," and that "[HIG's] current portfolio includes more than 100 companies." (*See*

**HIG'S MOTION TO DISMISS TO FIRST AMENDED COMPLAINT**

*id.*) Plaintiffs cannot have it both ways -- on one hand alleging that HIG is a state actor and, on the other, that HIG is a private equity firm with CFMG constituting a mere 1% of their investment portfolio. *See Ricardez*, 2020 WL 3891460, at *6, fn. 5 (finding the exact same press release Plaintiffs rely on in this case that confirm that "an *affiliate* of HIG, not HIG itself, 'made a strategic investment in' CFMG" and that HIG "would have no direct control over [the investment because it] directly contradicts any allegations that HIG is or could be a state actor"). Lastly, to the extent Plaintiffs attempt to claim that HIG exercised a governmental function because it was employed by local government to provide medical care (FAC, ¶ 14), the FAC is devoid of any facts that HIG itself was actually employed to provide medical care.

As shown above, Plaintiffs fail to allege adequately any "state actor" theory. Accordingly, all of Plaintiffs' Section 1983 claims, and related demands for punitive damages arising therefrom, fail and should be dismissed with prejudice.

### 2)   Plaintiffs Have Not Alleged Proximate Cause

To state any claim under 42 U.S.C. § 1983, Plaintiffs must also allege that HIG was the proximate cause of the alleged constitutional violation. *See Franklin v. Fox*, 312 F.3d 423, 445-46 (9th Cir. 2002). A private party is not the proximate cause of an alleged constitutional violation where he or she does not control the decision of the state actor leading to the alleged violation. *See id.* Furthermore, there is no proximate causation by a private party where the government retains control and authority over its independent decisions. *See Sigmon v. Community Care HMO*, 234 F.3d 1121 (10th Cir. 2000); *Howerton v. Gabica*, 708 F.2d 380, 385 (9th Cir 1983).

Here, the FAC makes only general allegations of proximate causation either directed to the omnibus "Defendants" or "Defendants County of Fresno, Wellpath, [HIG], and [CFMG]." (FAC, ¶¶ 62, 67, 77, 84, 89, 90, 99, 109, 113, 117-119, 125, 134, 137, 138). The FAC completely lacks any specific allegations that HIG had any involvement, control, or authority over either the alleged constitutional violation or any decision leading up to the alleged constitutional violation. This is not surprising because HIG's far-removed role simply cannot support allegations that would place it as the proximate cause of the alleged constitutional violations.

**HIG'S MOTION TO DISMISS TO FIRST AMENDED COMPLAINT**

62126597;3

AKERMAN LLP

601 WEST FIFTH  STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Accordingly, Plaintiffs' Section 1983 claim and related demands for punitive damages also fail for this independent reason.

### 3)   Plaintiffs' *Monell* Claim (Count 2) Fails

For equivalent reasons, HIG is entitled to dismissal on Plaintiffs' *Monell* claim. "After *Iqbal*, '[a]llegations of *Monell* liability will be sufficient for purposes of Rule 12(b)(6) only where they: (1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, *i.e.* show how the deficiency involved was obvious and the constitutional injury was likely to occur.'" *Herd v. County of San Bernardino*, 311 F. Supp. 3d 1157, 1167 (C.D. Cal. 2018). Further, a policy or custom is considered a "moving force" behind a constitutional violation only if both causation-in-fact and proximate causation can be established. *Inman v. Anderson*, 294 F.Supp.3d 907, 920 (N.D. Cal. 2018) (citing *Harper v. City of L.A.*, 533 F.3d 1010, 1026 (9th Cir. 2008)). Moreover, a bare allegation that the conduct conformed to some unidentified government policy or custom does not satisfy the fact pleading standard. *A.E. ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012). Rather, a complaint must include factual allegations that plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. *Id.*

Plaintiffs' *Monell* claim does not meet any of these requirements. As shown above, Plaintiffs have failed to set forth any plausible allegations that HIG is a state actor. Even if Plaintiffs *could* plead that HIG was a state actor, the FAC completely lacks *any facts* that HIG had a deliberate policy or custom that was a moving force behind the alleged constitutional violation. Completely absent from the FAC are allegations regarding any alleged HIG "policy, custom, or practice" or how it supposedly resulted in Plaintiffs' alleged constitutional injuries. Instead, the *Monell* claim only makes three very generic allegations against HIG, including: (1) "[t]he aforementioned acts and/or omissions of Defendants in being deliberately indifferent to Mr. Anderson's serious medical needs, health and safety and violating Mr. Anderson's civil rights were the direct and proximate result of customs, practices and policies of Defendants County of Fresno, Wellpath, [HIG] and [CFMG];" (2) "HIG,

AKERMAN LLP

601 WEST FIFTH  STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**HIG'S MOTION TO DISMISS TO FIRST AMENDED COMPLAINT**

62126597;3

CFMG/WELLPATH placed their financial interests and profits before their duty and responsibility to provide sufficient and competent medical/mental health care staff to patient/prisoners," and (3) "[t]he customs, policies and/or practices of Defendants Fresno County, Wellpath, H.I.G. Capital LLC, and California Forensic Medical Group (Aka Correctional Medical Group Companies, Inc. and aka Wellpath) were a direct and proximate cause of Plaintiffs' injuries and the death of Mr. Anderson in that Defendants failed to adequately train and supervise its employees and/or agents to prevent the occurrence of the constitutional violations suffered by Plaintiffs and Mr. Anderson, and by other prisoners at the Fresno County Jail. Defendants also failed to promulgate appropriate policies or procedures or take other measures to prevent the constitutional violations suffered by Plaintiffs and Mr. Anderson, and by other inmates at Fresno County Jail."  (FAC, ¶¶ 84-85, 86, 89). Additionally, Plaintiffs offer an imprecise laundry list of various vague failures by "Defendants" that they label as "policies." (*Id*., ¶ 85). None of these allegations are supported by any facts, as required by *Twombly* and *Iqbal*. Further, Plaintiffs' continued failure to allege any HIG- specific conduct that ties it to the alleged wrongs that form the basis of this lawsuit violates both Plaintiffs' pleading obligations and fundamental rules of fairness.

The FAC clearly does not satisfy Plaintiffs' burden. *See*, *e.g.*, *Herd*, 311 F. Supp. 3d at 1166 (dismissing *Monell* claim where plaintiff "did not explain how the alleged policies are deficient or reflect on how the custom or policy amounted to deliberate indifference"); *Reason v. City of Richmond, 2021 WL 107225, at *3 (E.D. Cal. Jan. 12, 2021)* is instructive. There, just like here, plaintiffs "have alleged no facts in their complaint regarding an unconstitutional policy, custom or practice, allegations of prior incidents, or facts which demonstrate that the alleged practice was of 'sufficient duration, frequency, and consistency such that the alleged custom or practice has become a traditional method of carrying out policy.'" *Id*. (citing to *Harper v. Ct. of Merced*, 2018 WL 5880786, *6 (E.D. Cal. Nov. 8, 2018)*). Thus, this Court (Hon. William B. Shubb) held that "plaintiffs' allegations are therefore insufficient to state a plausible, not merely possible, claim for relief," and dismissed plaintiffs' complaint. *Id*. (*citing to AE ex rel. Hernandez, 666 F.3d at 637*); *see also Johnson v. Baca*, 2013 WL 12131358, at *13 (C.D. Cal. 2013)* (dismissing *Monell* claim where the complaint failed "to allege any

AKERMAN LLP

601 WEST FIFTH  STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**HIG'S MOTION TO DISMISS TO FIRST AMENDED COMPLAINT**
62126597;3

facts showing the existence of this custom or practice" and did not "allege the substance of the County defendants' current policy or explain why it is inadequate").

Plaintiffs' "failure to train allegations" are also grossly deficient. In the already familiar fashion, the FAC is devoid of any allegations of HIG-specific "failure to train" conduct and, instead, it only offers two conclusory statements that "Defendants failed to properly train and supervise" their employees and staff. (FAC, ¶¶ 85-86). In *Reason*, just like here, "plaintiffs have not provided any factual allegations: (1) as to how the City's officer training is inadequate, (2) that the officials have been deliberately indifferent to the rights of Vallejo citizens, or (3) that the inadequacy of the training was what actually caused the alleged deprivation of plaintiffs' constitutional rights." *Id*., 2021 WL 107225, at *4. Accordingly, this Court held that "plaintiffs have failed to state a cognizable claim of failure to train under Monell." *Id*. The Court further noted that "[b]ecause the complaint fails to state a Monell claim under any theory, the court will dismiss [plaintiffs' *Monell* claim]." *Id*. The same reasoning applies here and, accordingly, Plaintiffs' *Monell* claim should be dismissed.

**D.  Plaintiffs' Claims for Violations of the ADA and Rehabilitation Act (Counts 6 and 7) Fail**

Plaintiffs' meet and confer letter clarified that the FAC alleges a violation of the ADA and RA against HIG. As with all the prior claims, Plaintiffs' ADA and RA claims do not allege any HIG-specific conduct. Further, the ADA claim is even more deficient and confusing, where the initial ADA allegations are directed solely against defendant Fresno County as "a public entity under Title II of the ADA," but the latter allegations are directed towards the omnibus "Defendants." (FAC ¶¶ 95, 97-100). Plaintiffs do not explain how all the Defendants fall under the ADA statutory scheme and, instead, simply allege in wholly conclusory fashion that "Defendants failed to reasonably accommodated Mr. Anderson's disability," and, "[a]s a direct and proximate results of Defendants' conduct, Mr. Anderson experienced pain …and other damages." (*Id*., ¶¶ 98-99). Plaintiffs' allegations are vague, confusing, and lack any factual support.

To state a claim for relief under Title II of the ADA, a plaintiff must show: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of

AKERMAN LLP

601 WEST FIFTH  STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**HIG'S MOTION TO DISMISS TO FIRST AMENDED COMPLAINT**

a public entity's services, programs or activities, or was otherwise discriminated against by the *public entity*; and (3) such exclusion, denial of benefits, or discrimination was the reason for his disability. *See* 42 U.S.C. § 12132 (emphasis added); *see also Weinrich v. Los Angeles*, 114 F.3d 976, 978 (9th Cir. 1997). A public entity is defined to include any state or local government and any department, agency or other instrumentality of a state or local government. 42 U.S.C. § 12131(1)(A) and (B). Clearly, HIG *is not* a public entity and, thus, it does not fall under the ADA and Plaintiffs have not and cannot demonstrate otherwise. Indeed, the FAC fails to identify any HIG's services, programs, or activities that Anderson was denied, much less denied based on his disability.

Similar requirements apply under section 504 of the RA, which applies specifically to programs that receive Federal financial assistance. *See* 29 U.S.C. § 794; *see also Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th 2001); *Weinrich*, 114 F.3d at 978. First, the FAC does not and cannot allege that HIG receives "Federal financial assistance." Second, HIG does not fall under the definition of programs and activities as set forth under Section 794(b) of the RA.

Further, Plaintiffs seem to allege that all the "Defendants" discriminated against Mr. Anderson because they did not provide the services he needed and did not accommodate his medical condition. (FAC, ¶¶98-100, 105-109). In other words, Plaintiffs allege Mr. Anderson received inadequate treatment for his medical condition. However, the ADA does not prohibit "inadequate treatment for disability." *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1021 (9th Cir. 2010) (overruled in part on other grounds by *Rivera v. Sheppard*, 859 F. App'x 218, 219 (9th Cir. 2021)). Indeed, the ADA does not "create a remedy for medical malpractice." *Id.* (quoting *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)). Thus, Plaintiffs' ADA claim fails on this ground, as well. Also, because "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act," *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999), the same is true regarding Plaintiffs' RA claim.

Moreover, the Ninth Circuit requires plaintiffs seeking damages under the RA and the ADA to prove that defendants acted "intentionally or with deliberate indifference." *Duvall*, 260 F.3d at 1139. Deliberate indifference requires both "knowledge that a harm to a federally protected right is

AKERMAN LLP

601 WEST FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

substantially likely and a failure to act upon that likelihood." *Id.* Conclusory allegations are insufficient to allege plausible ADA and RA claims. *See James v. Hubbard*, 2010 WL 4901827, at *4 (E.D.Cal. Nov.23, 2010) ("The complaint's conclusory allegation that Plaintiff was denied 'meaningful access to services ... and discriminated against' is insufficient, absent factual support, to state a valid claim."); *see also Fetter v. Bonner*, 2014 WL 654575, at *5 (E.D. Cal. February 19, 2014)(same); *Jaikishan v. Cty. of Sacramento*, 2019 WL 1400122, at *3 (E.D. Cal. Mar. 28, 2019)(same).

Plaintiffs have not met any of these requirements and, thus, their factually unsupported ADA and RA claims fail and must be dismissed.

### E.   Plaintiffs' Wrongful Death and Negligence Claims (Counts 9 and 10) Fail

Like all their other claims, Plaintiffs' Wrongful Death and Negligence claims fall far short of what is required.

California Code of Civil Procedure Section 377.60 provides a cause of action for wrongful death caused by the "wrongful act or neglect of another." "In any action for wrongful death resulting from negligence, the FAC must contain allegations as to all the elements of actionable negligence. Negligence involves the violation of a legal duty imposed by statute, contract or otherwise, by the defendant to the person injured, e.g., the deceased in a wrongful death action." *Jacoves v. United Merchandising Corp.*, 9 Cal.App.4th 88, 105 (1992) (internal citations omitted); *see also Quiroz v. Seventh Ave. Ctr.*, 140 Cal.App. 4th 1256, 1264 (2006) ("The elements of a cause of action for wrongful death are the tort [negligence or other wrongful act], the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs."). Thus, to state a claim for wrongful death, a plaintiff must make some minimal showing of negligence which caused the death of a decedent. Also, since wrongful death is a statutory cause of action, it must be pleaded with particularity. *See, Lopez v. Southern Cal. Rapid Transit Dist.* 40 Cal. 3d 780, 795 (1985). Plaintiffs fail to do so here.

Like their other claims against HIG, Plaintiffs' Wrongful Death claim improperly refers to "Defendants" collectively and fails to plead any specific allegations with respect to HIG. (FAC, ¶¶ 116-121). Indeed, the allegations are limited to conclusory proximate cause allegations that can be summarized as follows: "[a]s a direct and proximate result of Defendants' wrongful and/or negligent

AKERMAN LLP

601 WEST FIFTH  STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**HIG'S MOTION TO DISMISS TO FIRST AMENDED COMPLAINT**

62126597;3

acts and/or omissions, Plaintiffs [suffer damages]." (*Id.*, ¶117-121). Plaintiffs fail even to mention the other elements of negligence, let alone properly allege them.

Plaintiffs' Negligence allegations do not cure any of these deficiencies. The bare labels that "Defendants failed to comply with professional standards in the treatment … [and] also failed to supervise appropriately … the competence of provision of care and treatment to Mr. Anderson," are immediately followed by naked conclusions that "Defendants acted negligently and improperly, breached their respective duties." (*Id.*, ¶¶ 123-125).

Although it is well-established that absent a legal duty, no liability for injury to a person can ever pertain, *e.g., Ericson v. Federal Exp. Corp.* 162 Cal.App.4th 1291, 1305 (2008), Plaintiffs wholly fail to allege any special relationship between Anderson and HIG that would give rise to a duty of care. Absent such facts, HIG owed no duty directly to Anderson, making the FAC deficient as a matter of law. In addition to the lack of facts to sufficiently plead duty, the FAC does not allege any action taken by HIG that was a breach of any duty of care, which was the proximate cause of Plaintiffs' injury. *See, e.g., Bremer v. Cty. of Contra Costa*, 2015 WL 5158488, at *5 (N.D. Cal. Sept. 2, 2015) (holding that plaintiff's conclusory allegation that defendants breached their duty of care is not enough to satisfy the pleading standards set forth in *Twombly* and *Iqbal*). Nor does the FAC allege facts sufficient to plausibly establish that HIG's purported negligent conduct (which the FAC does not identify) was the proximate cause of Anderson's death. Thus, Plaintiffs have failed to allege the essential elements of negligence under California law and have failed to set out adequate factual allegations to support their claims.

Accordingly, since Plaintiffs have failed to plead even the most essential elements of negligence, their Wrongful Death and Negligence claims must be rejected and dismissed as a matter of law.

## F.   Plaintiffs' Claim for Punitive Damages Must Be Stricken

The court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter. (Fed. R. Civ. Proc. 12(f)). "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being plead" and "[i]mpertinent matter consists of

AKERMAN LLP

601 WEST FIFTH  STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**HIG'S MOTION TO DISMISS TO FIRST AMENDED COMPLAINT**

62126597;3

statements that do not pertain, and are not necessary, to the issues in question." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (citations omitted).

Plaintiffs' "Relief Requested" seeks punitive damages. However, punitive damages may be awarded only when a defendant's conduct is shown to be motivated by evil motive or when it involves reckless or callous indifference to the rights of plaintiffs. *Smith v. Wade* (1983) 461 U.S. 30, 56; *Dang v. Cross*, 422 F.3d 800, 807-809 (9th Cir. 2005) ("oppressive conduct is a proper predicate for punitive damages under § 1983"); *Mitchell v. Dupnik*, 75 F.3d 517, 527, n.7 (9th Cir. 1996); *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993). The FAC does not make any such allegations against HIG. Accordingly, the prayer for punitive damages as to HIG should be stricken.

## VI.     LEAVE TO AMEND SHOULD NOT BE ALLOWED

It is well-settled that there is no purpose in allowing a futile amendment. *Newland v. Dalton*, 81 F.3d 904, 907 (9th Cir. 1996). Indeed, [u]nder Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved. *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000). A district court should not grant leave to amend where the pleading could not possibly be cured by the allegation of other facts. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995); *see Ricardez*, 2020 WL 3891460, at *5 (no leave to amend in analogous case because amendment is futile).

Here, leave to amend in this case would be futile because Plaintiffs have not pleaded and cannot plead facts to show HIG's liability in this case.

## VII.     CONCLUSION

For the reasons stated above, HIG respectfully requests this Court grant its Motion and dismiss this action as to it with prejudice.

DATED:  February 14, 2022             **AKERMAN LLP**

By: */s/ Ellen Robbins*
     Ellen Robbins
     Evelina Gentry
     Attorneys for Defendant
     H.I.G. CAPITAL, LLC

AKERMAN LLP
601 WEST FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**HIG'S MOTION TO DISMISS TO FIRST AMENDED COMPLAINT**